In the Matter of the Application of MARTIN T. McMAHON, Receiver of Taxes, Respondent. v. FRANCIS A. PALMER, Appellant.

The provision of the act "in relation to taxes and assessments in the city of New York," etc. (§ 7, chap. 302, Laws of 1859), requiring the deputy tax commissioners personally to examine "each and every house, building, lot, pier or other assessable property," and to furnish under oath to the commissioners of taxes a detailed statement of such property, refers only to real property, not to personal.

It is not essential that the oath so required shall be made on any particular day ; if it be taken after the examination of property is made by the deputy and before the statement is filed with the commissioners, it is sufficient.

In the assessment of shares of national banks located in the city of New York, under the act of 1880 (§ 3, chap. 596, Laws of 1880 ; amended by chap. 477, Laws of 1881), when the owner does not reside in the ward where the bank is located and has no real estate therein, it is proper that the assessment be made upon a list specially prepared for that purpose, although the owner lives and is assessed for personal property in another ward of the city.

Such a mode of assessment is not in conflict with the provision of the United States Revised Statutes (§ 5219), which authorizes the inclusion, for purposes of State assessment and taxation, of shares of national banks, in the valuation of the owner's personal property; the provision affects only the judicial act of the assessors, not the mere ministerial act of those officers in estimating and noting the result of their judicial determination.

*Albany City Bank* v. *Maher* (19 Blatchf. 174), distinguished.

The system of taxing the shares of national bank stock in this State is not repugnant to the restriction imposed upon such taxation by the National Banking Act (U. S. R. S., § 5219); *i. e.*, that the taxation shall not be at a greater rate than is assessed upon "other moneyed capital" in the hands of individual citizens of the State ; the statute simply brings the capital invested in national banks within the taxing power of the State and places it on terms of equality in respect thereto with all other assessable personal property.

*It seems* that investments in the shares of railroad, ferry, canal, manufacturing and other industrial corporations are not "moneyed capital" within the meaning of said provision of the Federal statute.

*It seems,* also, that the exemption from taxation by State law of some moneyed capital does not necessarily invalidate a statute authorizing an assessment upon national bank shares.

The fact that some corporations, or some personal property, is subject to a less rate of taxation than that employed in banking corporations will not alone vitiate the law imposing taxes upon bank shares, unless it appears to be the clear, legislative intent to thereby effect discrimination against them.

The provisions of the act of 1843, " for the collection of taxes in the city of New York " (Chap. 230, Laws of 1843), authorizing proceedings to punish for misconduct in refusing or neglecting to pay a tax upon personal property, are not violative of the constitutional prohibition against depriving the citizen of his property " without due process of law." The proceedings by which taxes for governmental purposes are collected are administrative, not judicial in their character, and the summary method of procedure so authorized is due process of law within the meaning of the Constitution.

Where, in proceedings under said act, it appeared that the person pro-
ceeded against had full notice of proceedings for the imposition of the
tax and an opportunity to question their correctness, by proceedings to
review the action of the assessing officers, but omitted so to do, *held*, that
he was estopped from raising any question affecting the regularity of the
proceedings or the exercise of the judicial powers conferred upon the
assessors in making the assessment.

(Argued March 18, 1886 ; decided April 13, 1886.)

APPEAL from order of the General Term of the Court of
Common Pleas in and for the city and county of New York,
made March 13, 1884, which affirmed an order of Special Term,
directing the commitment of the defendant until he shall pay the
amount of a personal tax imposed upon him, with costs, etc.
The proceeding was under chapter 230, Laws of 1843.

The material facts are stated in the opinion.

*William Hildreth Field* for appellant.    The system of
taxing the appellant's national bank shares resulted in taxing
the moneyed capital invested in them at a greater rate than is
assessed upon other moneyed capital in the hands of individual
citizens of this State invested in other investments, and was
beyond the authority of this State and the jurisdiction of the tax
commissioners.    (1 U. S. R. S., § 5219 ; *People* v. *Weaver*, 100
U. S. 543 ; *Boyer* v. *Boyer*, 113 id. 689 ; *County of San Mateo*
v. *Southern Pac. R. R.*, 8 Am. & Eng. R. R. Cas. 1 ; *People,*
*ex rel. Westchester F. I. Co.*, v. *Davenport*, 91 N. Y. 574.)
This proceeding under chapter 230 of the Laws of 1843 would
deprive the appellant of his property and liberty without due
process of law, and deprive him of the equal protection of
the same, violating the fourteenth amendment of the Constitu-
tion of the United States.    (*Kentucky R. R. Tax Cases*, 115
U. S. 322 ; *County of San Mateo* v. *South. Pac. R. R.*, 8 Am.
& Eng. R. R. Cas. 1 ; *Stewart* v. *Palmer*, 74 N. Y. 183.)
The oath of the deputy tax commissioner, appended to the
book containing the assessment of the shares of the National
Broadway Bank, failing to comply with the provision of the
statute relative to the form of oath to assessments, is a juris-

dictional defect and fatal to the validity of the assessments. (*Brevoort* v. *City of Brooklyn*, 89 N. Y. 129; *Westfall* v. *Preston*, 49 id. 349; *Bellinger* v. *Gray*, 51 id. 610; *Bradley* v. *Ward*, 58 id. 401; *People* v. *Suffern*, 68 id. 321; *Merritt* v. *Village of Port Chester*, 71 id. 309; *Hinckley* v. *Cooper*, 22 Hun, 253; *Schreiber* v. *Kuehler*, 49 Wis. 301; *Merrill* v. *Taylor*, 6 Neb. 236.) The oath of the deputy tax commissioner appended to the book containing the assessment of the shares of the National Broadway Bank being premature is a jurisdictional defect and fatal to the validity of the assessment. (*Westfall* v. *Preston*, 49 N. Y. 349; *Albany City Bk.* v. *Maher, Receiver*, 19 Blatchf. C. C. 175.) The legislature may prescribe the kind of notice and the mode in which it shall be given, but it cannot dispense with all notice. (*Stewart* v. *Palmer*, 74 N. Y. 183, 188; Laws of 1859, chap. 302, § 9.) Where a later statute not purporting to amend a former one upon the same subject covers the whole subject and was plainly intended to furnish the whole law thereon, the former statute will be held to be repealed by necessary implication, although the later statute contains no repealing clause. (*Heckman* v. *Pinckney*, 81 N. Y. 211.)

*D. J. Dean* for respondent. The tax commissioners had jurisdiction, under chapter 596 of the Laws of 1880, to assess the respondent as a stockholder in the National Broadway Bank, in the city of New York, on the value of his shares of stock therein, for the purpose of taxation in the year 1881. (*People, ex rel. Bk. of Commerce*, v. *Com'rs of Taxes*, 2 Black, 620; *People, ex rel. Bk. of Commonwealth*, 9 Wall. 353; *Lionberger* v. *Rouse*, id. 468; 2 R. S. [7th ed.] 991; *People, ex rel. Williams*, v. *Weaver*, 100 U. S. 547; *People* v. *Com'rs*, 4 Wall. 244; *Stanley* v. *Supervisors*, 15 Otto, 318; *Gallatin* v. *Com'rs*, 4 id. 415; *People* v. *Com'rs*, 4 Wall. 244; *Albany City Bk.* v. *Maher*, 19 Blatchf. C. C. 178; *First Nat. Bk. of Utica* v. *Waters*, id. 242.) The providing of a separate system for the taxation of certain corporations by chapter 542 of the Laws of 1880, does not operate to make the system provided for taxing bank shares by chapter 596 of the Laws of

1880 obnoxious to the restrictions of section 5219 of the U. S. Revised Statutes. (*People, ex rel. Westchester F. I. Co.,* v. *Com'rs,* 91 N. Y. 574; *Albany City Bk.* v. *Maher,* 19 Blatchf. C. C. 178; *Van Allen* v. *Assessors,* 3 Wall. 584; *Farrington* v. *Tenn.,* 95 U. S. 687; *Union Bk.* v. *State,* 9 Yerg. [Tenn.] 490; *Delaware R. R. Tax,* 18 Wall. 206; *Bradley* v. *People,* 4 id. 459; *Nat. Bk.* v. *Commonwealth,* 9 id. 353; *People* v. *Com'rs,* 4 id. 256; *Hepburn* v. *School Dist.,* 23 id. 485; *Prov. Inst. for Savings* v. *Boston,* 10 Mass. 583; *Lionberger* v. *Rouse,* 9 Wall. 476; *Tappen* v. *Merch. Bk.,* 19 id. 540; *Everitt's Appeal,* 71 Penn. St. 219; *Mc Veagh* v. *Chicago,* 49 Ill. 329; *Evansville Bk.* v. *Britton,* 15 Otto, 324.) In the absence of jurisdictional errors, there is no power in the court, at this stage of the proceeding, to review the action of the commissioners of taxes, and remit or reduce the tax. *Mygatt* v. *Washburn,* 15 N. Y. 316; *Wade* v. *Matheson,* 4 Lans. 158; *Bailey* v. *Buell,* 59 Barb. 158; *Palmer* v. *Lawrence,* 6 Lans. 282; *Darwin* v. *Strickland,* 57 N. Y. 492; *Wheeler* v. *Mills,* 40 Barb. 644; *Metcalf* v. *Messenger,* 46 id. 325; Laws of 1859, chap. 302, §§ 8–11; id., § 20; Laws of 1867, chap. 410, § 4; Laws of 1870, chap. 382, § 8; *Ontario Bk.* v. *Bunnell,* 10 Wend. 186; *Eaton* v. *Callender,* 11 id. 91; *Van Rensselaer* v. *Whitbeck,* 5 Barb. 133; *Van Rensselaer* v. *Cottrel,* 7 id. 127; *Chegaray* v. *Jenkins,* 5 N. Y. 376; *Vail* v. *Owen,* 19 Barb. 22; *People* v. *Halsey,* 53 id. 547; *Barhyte* v. *Shepperd,* 35 N. Y. 238; *Foster* v. *Van Wyck,* 2 Abb. Ct. of App. Dec. 167; *Osborn* v. *Danvers,* 6 Pick. 89; *In re Boyd, Assessors,* v. *Gray,* 34 How. 323; *Smith* v. *Intern. L. Ass. Co.,* 35 id. 126; *Bk. of Commonwealth* v. *Mayor, etc.,* 43 N. Y. 184; *Union Steamboat Co.* v. *Buffalo,* 82 id. 351; *Hill* v. *Sellick,* 21 Barb. 207; *Swift* v. *Poughkeepsie,* 37 N. Y. 511; *Gen. Valley Bk.* v. *Suprs. of Livingston,* 53 Barb. 293.) The entry of the assessed valuation of bank shares in the city of New York in a separate set of books is not a failure to comply with the provisions of the statutes, and assessments so entered are not void. (*Foster* v. *Van Wyck,* 2 Abb. Ct. of App. Dec. 167; *Williams* v. *Wea-*

ver, 75 N. Y. 30.)   The appellant cannot impeach the assessment on the ground that sufficient notice was not given to him. (*In re De Peyster*, 80 N. Y. 572 ; *In re Lowden*, 89 id. 548 ; *Meth. P. Church* v. *Baltimore*, 6 Gill, 391; *O'Neil* v. *Bridge Co.*, 18 Md. 126 ; Cooley on Taxation, 266.)   The confirmation of the assessment and laying of the tax by the board of aldermen is sufficient.   (*Billings* v. *Mayor, etc.*, 68 N. Y. 416.)   The oath taken by the deputy tax commissioner is sufficient to fulfill the requirements of the statutes.   (*In re Kendall*, 85 N. Y. 305; *In re M. & H. R. R. Co.*, 19 Wend. 135 ; *Weeks* v. *Ellis*, 2 Barb. 320 ; *People* v. *Cook*, 8 N. Y. 67; *People* v. *Hopson*, 1 Denio, 574; *Parish* v. *Golden*, 35 N. Y. 462; *B. & S. L. R. R. Co.* v. *Supervisors of Erie Co.*, 48 id. 93; *Stockle* v. *Silsbee*, 41 Mich. 615.)   Chapter 230 of the Laws of 1843 is not unconstitutional as depriving the appellant of liberty and property without due process of law, and without a trial by jury.   (Const. of United States, amendment 5 ; Const. of New York, art. 1, §§ 1, 2, 5 ; *Murray's Lessee* v. *Hoboken Land Co.*, 18 How. [U. S.] 272; *Weimer* v. *Bunbury*, 30 Mich. 201–211 ; *State* v. *Allen*, 2 McCord, 56 ; *Rockwell* v. *Nearing*, 35 N. Y. 302; *Harris* v. *Wood*, 6 Munr. 642 ; *McMillen* v. *Anderson*, 95 U. S. 37–41 ; *In re Trustees N. Y. P. E. Pub. School*, 31 N. Y. 579 ; Cooley on Taxation, 33, 36.)

RUGER, Ch. J.   Upon an application by the receiver of taxes of New York to the Court of Common Pleas, the appellant was adjudged guilty of misconduct in refusing to pay the tax assessed upon his personal property for the year 1881, and a fine was imposed upon him therefor.   The proceeding was had under the provisions of chapter 230, Laws of 1843, and was conducted in conformity therewith.   The tax in question was predicated upon the customary annual assessment of property, liable to taxation under the general laws of the State, but was in this instance based upon an assessment of the value of national bank shares owned by the appellant. The number of shares so owned by the defendant and the

estimated value thereof, was furnished by him to the assessment officers, and upon the information thus obtained, with that derived from other sources, said shares were appraised at their actual value, and the amount thus assessed was placed in the lists provided for the enrollment of property of that description. Certain irregularities are alleged to have occurred in the proceedings for the assessment of the property which it is claimed were jurisdictional in character, and ought to render such assessment invalid and the tax levied thereon void.

It is quite true if any act which was required by law to be performed by the assessment officers, and which is made thereby the condition of a valid assessment, has been omitted by them, it will render the assessment void.  We have been unable, however, to find any such irregularity in the proceedings. Those claimed to exist are the following :

That the deputy tax commissioners failed to comply with section 7 of chapter 302 of the Laws of 1859, which required them personally to examine " each and every house, building lot, pier or other assessable property," and furnish under oath to the commissioners of taxes and assessment a detailed statement of such property, with the name of the owner or occupant, " with such other information in detail relative to personal property," as said commissioners may from time to time require.    This provision very obviously refers only to real property except in the clause expressly referring to personal property, and there is no claim that that requirement has been omitted.    This view of the statute was assumed by this court in *Brevoort* v. *City of Brooklyn* (89 N. Y. 128) and seems to be required by the plain inapplicability of the provision to assessments of personal property.

It is also claimed that the oath required to be made to the statement directed to be returned by the deputy to the commissioners of taxes and assessments was improperly made, in that, it was sworn to on the eighth instead of the second Monday of January, being the tenth.    There is no provision requiring such oath to be made on any particular day, and the whole object and intent of the statute in respect thereto is

complied with, provided it be taken after the examination of property is made by the deputy commissioner, and before the statement is filed with the commissioners on the second Monday of January thereafter.

It is also claimed that the entry of the assessments for national bank shares, upon a list or book separate from other assessments for personal property against individuals in the city renders such assessment void. It is provided by section 3, chapter 596, Laws of 1880, that such " shares shall be included in the valuation of the personal property of such stockholders in the assessment of taxes at the place, city, town or ward where such bank, banking association or trust company is located and not elsewhere, whether the stockholder resides in said place, city, town or ward or not." Sections 4 and 5 of chapter 410 of the Laws of 1867 provide for the assessment of personal property in the city of New York upon separate rolls from that of real estate. In the General Laws of the State the personal property of an individual is required to be assessed against him in the place of his residence, and assessments of real estate follow the location of such property.

It must follow as the necessary consequence of these requirements when the individual assessed does not live in the same ward in which the bank is located wherein he owns shares, and does not own real estate therein, that his assessment for bank shares must be made upon lists especially prepared for that purpose, in the ward where it is located, or the property must altogether escape assessment and taxation. The familiar rule that a statute must be so construed as to give it effect and to avoid a result which would render it inoperative, if it be reasonably susceptible of such an interpretation, would seem to require us to sanction the only mode of assessment which seems capable of securing the benefits designed by the statute.

It is also clear that the tax payer has not been deprived of any substantial benefit by the mode thus pursued. The statute gives information to him of the place where the roll is to be deposited for examination, and the length of time during which it is to be there kept for inspection, and of his opportunity

during such time, to apply to the proper officers for the correction of any errors which he may find in his assessment. Not only this, but the commissioners of taxes and assessments are also required to advertise the fact of the completion of the annual record·containing all assessments upon property in the city of New York, and the time when the same will be ready for inspection by tax payers, and to keep the same in the tax commissioner's office, open for that ·purpose, from the second Monday in January to the thirtieth day of April thereafter. There is no. complaint but that these requirements were complied with, or but that the appellant had actual notice of the assessment in question, in ample time to procure its correction if any error existed therein; in fact it affirmatively appears that the relator did appear before the commissioners of taxes on the 12th day of April, 1881, and made affidavit upon which he procured a substantial reduction of the assessment in question. (*Matter of De Peyster*, 80 N. Y. 565; *Matter of Lowden*, 89 id. 548.)

It does not appear that there is any provision of law requiring the assessments of individuals for bank shares in New York to be made otherwise than in the mode adopted in this case, and in the absence of such provisions we do not see why the practice here pursued was not in harmony with the general regulations applicable to the subject, and did not afford to the appellant the same opportunity for correction and notice of the assessment in question that was given to all other tax payers of similar assessments in New York. There is nothing in section 5219 of the Revised Statutes of the United States, which either impliedly or expressly condemns the mode of registering the assessment adopted in this case. That section provides that nothing contained in that act shall prevent the shares owned by an individual in a national bank from being included in the valuation of his personal property in assessing. taxes imposed by the authority of the State in which the bank is located. The mere ministerial act of the officers in estimating and noting the result of the judicial determination, as to the liability of the individual, and the value and assessability of his personal prop-

erty, provided such act does not produce an inequality of assessment, are not affected by the provisions of the section. The section purports only to affect the judicial act of the assessors in including the value of bank shares in the assessments of property and not to regulate its exercise except in respect to the rate of taxation and assessment adopted. The provisions pertaining to the assessment of bank shares in New York are essentially different from those considered by Judge WALLACE in *Albany City Bank* v. *Maher* (19 Blatchf. 174). The views there expressed are inapplicable to the modes of assessment prescribed in the city of New York, and apply only to cases where the assessment of both real and personal property is required by statute to be made on the same book or roll. The views we have expressed are sustained by the decisions of this court in *Foster* v. *Van Wyck* (2 Abb. Ct. App. Dec. 167), and also by *Williams* v. *Weaver* (75 N. Y. 30), which in this respect was unaffected by the subsequent proceedings in that case. There are no other objections affecting the regularity of the proceedings for assessment, which are of sufficient importance to merit notice.

It is further objected by the appellant that "the system of taxing the appellant's national bank shares resulted in taxing the moneyed capital invested in them at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of this State invested in other investments." The particular ground upon which the appellant bases this point is the claim that "there is no law upon our statute books for the taxing of shares of stock of railway companies, street railways, ferry and canal companies, fire and life insurance, trading and other miscellaneous companies, and the deposits in savings banks." This claim seems to be unfounded in fact. A careful examination of the statutes and a comparison of the burdens laid upon the property, capital and business of the people under the laws of the State will show that the money invested in national banks is subjected to no greater burden than that imposed upon other species of assessable property. Capital invested in national banks is taxable only upon the individuals

owning shares therein, and for the purpose of such taxation is assessable like all other personal property liable to taxation in the State, at its actual value. Such shares were originally made assessable by chapter 761 of the Session Laws of 1866, under the authority of the act of Congress, section 5219, which expressly permitted such assessment, subject only to the restrictions "that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State," and that the shares of such stock owned by a non-resident of the State shall be taxed in the city or town where the bank is located, and not elsewhere. The act of 1866 was amended by chapter 596 of the Laws of 1880, and chapter 477 of the Laws of 1881, so as to authorize the allowance to a tax payer upon bank shares of all the deductions and exemptions allowed by law in assessing the value of other taxable personal property owned by individual citizens of the State. The only result of this legislation has been to bring the capital invested in national banks within the taxing power of the State and place it on terms of equality, with reference to general taxation, with all other assessable personal property therein. The general laws of the State require all property, both real and personal, no matter by whom owned, except in certain cases of special exemption, to be assessed for purposes of taxation. This requirement embraces all property owned by individuals as well as corporations, and includes all shares of stock held by individuals in corporations, except in cases where the capital stock of such corporations is itself liable to taxation as against the corporation. (§§ 1, 2, 3, 4, 5, 6, 7, pp. 981 and 982, R. S. [7th ed.]; § 1, p. 1036, R. S. [7th ed.]) By special provision of law all assessments upon capital employed in banking corporations, whether national or State, are required to be made in the same manner and to have in view the placing of these institutions on terms of absolute equality. (Chap. 140, Laws of 1880.) The various railroad, ferry, canal, manufacturing and other industrial corporations referred to by the appellant, are not only liable to taxation, either upon their capital stock, or upon their shares held by individuals which are

substantially the equivalents of each other, but are also subject to contributions from their gross receipts, taxes upon franchises and other impositions from which bank capital is altogether exempt. (Chap. 456, Laws of 1857; chaps. 534 and 542, Laws of 1880; chap. 477, Laws of 1881; § 7, p. 982, R. S. [7th ed.].) Our system of laws with reference to the taxation of incorporated companies, and capital invested therein, has been carefully framed with a view of reaching all taxable property and subjecting it to equality of burden so far as that object is attainable in a matter so complex. In view of the wide variation in the employable value of such investments, and the frequent mutations in their condition, it is by no means certain that this object has not been attained with reasonable accuracy. It is quite clear from even this cursory review of the statutes that if any discrimination is made by our laws in taxing capital invested, it is not to the prejudice of that employed in banking corporations.

Even if this were not the result of the statute, we are of the opinion that investments in the shares of the companies named, does not come within the meaning of that clause in the Federal statutes, referring to other moneyed capital in the hands of individuals. That phrase as generally employed, distinguishes such capital from other personal property, and investments, in the various manufacturing and industrial enterprises. And this is the sense in which it is used in our tax laws as appears by reference to the statutes. (§§ 3, 4, p. 982, R. S. [7th ed.]; chap. 195, Laws of 1845; chap. 456, Laws of 1857; chap. 240, Laws of 1863; § 1, p. 1036, R. S. [7th ed.]; chap. 542, Laws of 1880, and the laws amendatory thereof.) Such is also believed to be the meaning attached to these words as generally used in the Federal statute. The obvious intent of the Federal statute was to prevent discrimination against investments in national bank shares, and put them upon terms of equality as to taxation with similar institutions and investments in the several States, and the language of the statute seems to have been selected with reference to that object. The rule of comparison stated therein is not with the rate of taxation imposed

upon personal property generally, or with specific investments in mining, manufacturing or the various other industrial corporations organized throughout the State, but with other "moneyed capital" in the hands of individual citizens. These are words of limitation as well as of description and are to be defined according to the meaning which has been generally given to them.

It was said in *Evansville Bk.* v. *Britton* (105 U. S. 322, 324) that "the act of Congress does not make the tax on personal property the measure of the tax on bank shares in the State, but the tax on moneyed capital in the hands of the individual citizen." "Undoubtedly there may be much personal property exempt from taxation, without giving bank shares a right to similar exemption, because personal property is not necessarily moneyed capital." In *Providence Inst. for Savings* v. *Boston* (101 Mass. 575, 583) it is said "that this clause was obviously intended to preclude the possibility that property of that description should be singled out for special and peculiar taxation. Its operation would be to prevent oppressive and hostile discriminations unfavorable to the banks." It might well seem reasonable to Congress to take some precaution that the banks in each State should be taxed only at the same rate, and generally in the same manner, as the moneyed capital of individual citizens in the same State. It was claimed in *Hepburn* v. *The School Directors* (23 Wall. 480, 481), that the words "moneyed capital," as used in the act, signified only money put out at interest, but the court there held that such a construction was too narrow, and that the phrase included stock in banks and perhaps other stocks and securities. The court in that case further held that the exemption of some moneyed capital from assessment did not necessarily invalidate a statute authorizing an assessment upon national bank shares, saying that "it could not have been the intention of Congress to exempt bank shares from taxation because some moneyed capital was exempt."

We are, therefore, of the opinion, even if it could be shown that there were some corporations, or some personal property

that was subject to a less rate of taxation than that of capital employed in banking corporations, it would not vitiate the law imposing taxes upon shares in banks, unless it appeared to be the clear intent of the legislature thereby to effect discrimination against them.

It is further claimed " that the proceedings under chapter 230 of the Laws of 1843 would deprive the appellant of his property and liberty, without due process of law." There is no foundation for this claim.

The proceedings by which taxes for governmental purposes have been assessed, levied and collected from the citizen have always been regarded as administrative, and not judicial in their character, and to constitute due process of law within the meaning of the Constitution. Such proceedings have from necessity been exercised by governments during all times, by summary methods of procedure, and to require the deliberation and delay incidental to judicial proceedings in the exercise and enforcement of the taxing power by government would seriously cripple its efficiency, if not destroy its existence. These methods were in exercise and existence long before the adoption of the Constitution, and have never been supposed to be affected thereby. In the *Matter of the N. Y. P. E. Public School* (31 N. Y. 574, 584) Judge DENIO says, that " in executing the taxing power, the legislature provides such agencies and safeguards against surprise, mistake or injustice, as it thought expedient. It is manifestly proper that the tax payers should have notice of the imposition proposed to be laid upon them, and an opportunity for making suggestions and explanations to the proper administrative board or officer; and this is generally secured in all well-considered systems of taxation. But it is for the legislature to determine and prescribe, in every case, what shall be sufficient, and there is not, that I am aware of, any constitutional provision bearing on the subject." Judge POR-TER, in *Rockwell* v. *Nearing* (35 N. Y. 302, 308), says: " There are many examples of summary proceedings, which were recognized as due process of law, at the date of the Constitution, and to these the prohibition has no application." The Supreme

Court of the United States in *Murray's Lessee* v. *Hoboken Land and Improvement Co.* (18 How. [U. S.] 272), stated, "that probably there are few governments which do or can permit their claims for public taxes either on the citizen or the officers employed for their collection or disbursement to become subjects of judicial controversy according to the course of the law of the land. Imperative necessity has formed a distinction between such claims and all others, which has sometimes been carried out by summary methods of proceeding and sometimes by systems of fines and penalties, but always in some way observed and yielded to." (See, also, *McMillen* v. *Anderson*, 95 U. S. 37; *Harris* v. *Wood*, 6 Monr. 642; *Weimer* v. *Bunbury*, 30 Mich. 201.)

As we have seen, the appellant had full notice of the proceedings for the imposition of the tax in question, and an opportunity to question their correctness by proceedings to review the action of the assessing officers, if he had felt aggrieved thereby, but having omitted to exercise that right he is now estopped from raising any question affecting the regularity of the proceedings, or the exercise of the judicial powers conferred upon the assessors in making the assessment in question.

We have thought it unnecessary to discuss other answers to the points raised, and other questions presented upon the briefs of counsel as they are either embraced in what has been already said, or are too plain to require serious notice.

The order should be affirmed.

All concur.

Order affirmed.