### *In re* CITY OF BUFFALO.

*(Superior Court of Buffalo, Special Term.  March 10, 1891.)*

**1. EMINENT DOMAIN—SUPERVISORY POWER OF COURT—CONSTITUTIONAL LAW.**

Laws N. Y. 1887, c. 557, authorizes the park commissioners of the city of Buffalo to select and locate grounds in the Thirteenth ward of the city, and in the town of West Seneca, adjoining the city, as in their opinion shall be proper, to be set apart for one or more public parks; and provides that the superior court of Buffalo shall appoint three commissioners to ascertain the compensation to be paid to the owners of the land taken, and shall have jurisdiction over the confirmation of the commissioners' report, settlement of conflicting claims, etc.  *Held,* that the act was a valid exercise of legislative power, under Const. N. Y. art. 1, § 7, which provides that compensation for private property taken for public use "shall be ascertained by a jury, or by not less than three commissioners appointed by a court of record, as shall be prescribed by law," and its validity is not affected by the fact that it authorizes the taking of land without the territorial jurisdiction of the court, since the power of the court thus exercised is not judicial, but only administrative.

**2. SAME—ACT VALID IN PART.**

Even if the act violated the constitution, (article 1, § 7,) in providing that the superior court of Buffalo should have jurisdiction as to lands in West Seneca, which was outside the territorial jurisdiction of the court, such provision would not vitiate the entire act, since it could be completely executed by taking only lands in the Thirteenth ward of the city.

Motion to confirm awards of the commissioners in proceedings instituted by the city of Buffalo to condemn land for public parks.

*William F. Mackey,* for the city of Buffalo.  *Spencer Clinton* and *John Cunneen,* for motion as to lands in city of Buffalo.  *Norris Morey* and *Herman Hennig,* for motion as to all proceedings.  *John C. Graves,* for park commissioners.  *Stephen Lockwood* and *A. C. Calkins,* for dismissal.

HATCH, J.  Upon the motion to confirm the reports of the commissioners, preliminary objection is made that the court is without jurisdiction to entertain the proceedings, and motion is made to dismiss the whole proceeding for that reason.  Two grounds are assigned why the motion to dismiss should prevail:  *First.*  It is claimed that the act condemns land for public use situate in the town of West Seneca, and that such locality is without the territorial jurisdiction of this court.  *Second.*  That the act contemplates an entire scheme to establish a park or system of parks, and that each provision is so dependent upon the other that should one part fail the whole must fall, and in consequence that the court is without jurisdiction over such lands taken as lie within the city of Buffalo.

The act under which the proceedings are instituted is found in chapter 557, Laws 1887, section 1 of which authorizes the park commissioners of the city of Buffalo to select and locate grounds for a public park in the Thirteenth ward of said city, and in the town of West Seneca, adjoining said city, as in their opinion shall be proper and desirable to be set apart for one or more public parks, and to locate and lay out streets and approaches thereto, as may be necessary to connect said park or parks with the existing public parks. Section 2 provides that before the lands shall be taken the common council of said city shall, by resolution, declare that said city has determined to take and appropriate the said lands or so much of the same as the said council shall determine to take, for the purposes aforesaid.  Said act then provides for notices, etc., appointment of three commissioners by this court to ascertain the just compensation to be paid to the several persons whose land shall be taken, and vests the said court with jurisdiction of the subsequent proceedings, confirmation of the report, etc.; also to direct to whom the money awarded shall be paid, or in what bank deposited, and, in the event that there be conflicting claimants, to determine the person or persons entitled to the money, by reference or otherwise, and direct payment when found to the person entitled. Other provisions of the act provide for amendment of the proceedings, and

the raising of money to pay for the lands taken.    They are not of present im--
portance.

The purpose of this act, as expressed in its title, is to authorize the location.
of land for park purposes, and its provisions authorize the park commission--
ers to select and locate lands for such purposes as in their opinion may be de-
sirable.    Two places are given in which to select and locate,—the Thirteenth.
ward of the city and the town of West Seneca.    Where they shall select and·
locate is thus left wholly in their discretion.    The land selected may be lo--
cated all in the ward, or in the town, or in both.    The exercise of this discre-
tion is not binding upon the council, nor does it absolutely designate the lands.
which shall be taken; for it is still reserved to the common council to declare,
by resolution, what lands so located shall be taken, and until such determi--
nation be made no lands are taken.    In the exercise of this power the council.
may designate, of the lands located, what portion shall be taken, and it is:
clearly within their power to take the lands selected within the ward or the
town, or in both.    It is quite easy, therefore, to see that the whole purpose of
the act may be accomplished without a foot of land being taken outside of the·
limits of the city of Buffalo, and, if this result may be reached, it is quite·
within the power of the court to support it.    That the court, in such contin-
gency, would be vested with jurisdiction of the subject-matter is not questioned.
In *People* v. *City of Rochester*, 50 N. Y. 525, it was held that, if an act may·
be completely executed without violation of the constitution, then it is not
repugnant to the constitution, even though other portions of the act, if exe-
cuted, would have been.    Cooley, Const. Lim. (5th Ed.) 212, 213, thus lays:
down the rule: "If, when the unconstitutional portion is stricken out, that
which remains is complete in itself, and capable of being executed in accord-
ance with the apparent legislative intent, wholly independent of that which
was rejected, it must be sustained.    *  *  *    But if its purpose is to accom-
plish a single object only, and some of its provisions are void, the whole must
fail unless sufficient remains to effect the object, without the aid of the in-
valid portion."    This language has been adopted, as stating the true rule, by
the court of appeals.    *In re Village of Middletown*, 82 N. Y. 196; *People* v.
*Briggs*, 50 N. Y. 565, 566; *People* v. *Kenney*, 96 N. Y. 294.

That the act may be executed is plain.    Assuming that the court is vested
with no jurisdiction over the lands located in West Seneca, are they so essen-
tial to the establishment of the park or parks as an entire scheme that the
purpose of the act must fail?    The land taken wholly within the city con-
sists, practically, of 100 acres; those outside of the city, practically, of 183
acres.    The act contemplates the location of parks.    The language is, "lands
for public parks," and, in speaking of the construction of streets and ap-
proaches, it uses the words "such park or parks."    In speaking of the lands
taken, it says, "for the purposes of a park or parks."    It also denominates
the steps to be taken as proceedings in the act and amendment thereto, (Laws
1890, c. 142, § 6,) and in the latter provision is made for discontinuing the
proceedings.    In carrying out the provisions of the act, a separate proceeding
was instituted for each parcel of land taken.    The award made and report of
the commissioners is separate upon each parcel.    No suggestion is made but
that the land taken within the city may be and is available for the contem-
plated purpose, independent of the other parcels.    Certainly there is nothing
appearing from which the court can see that the land is not so available.    It
is the duty of the court always to presume in favor of the validity of a law,
until the contrary is proved beyond a reasonable doubt.    *Weismer* v. *Village*
*of Douglas*, 64 N. Y. 91–99; *In re New York El. R. Co.*, 70 N. Y. 343.

Independent of other considerations, it seems to follow that the law can be
upheld, so far as it deals with lands within the limits of the city of Buffalo,
and to that extent the court has jurisdiction of the subject-matter, treated as
a judicial proceeding.    I am, however, of opinion that the whole act is a

valid exercise of legislative power. The power to exercise the right of emi-
nent domain is legislative, not judicial. Judge DENIO, in *People* v. *Smith*, 21
N. Y. 598, says: "The exercise of the right of eminent domain stands on the
same ground with the power of taxation; both are emanations of the law-
making power. They are the attributes of political sovereignty, for the exer-
cise of which the legislature is under no necessity to address itself to the
courts." There is no restraint upon the exercise of this power, save that the
property must be taken for a public use, and compensation must be made.
*In re Union El. R. Co. of Brooklyn*, 112 N. Y. 74, 19 N. E. Rep. 664; *Com-
missioners* v. *Armstrong*, 45 N. Y. 244. The legislature may exercise this right,
or it may delegate the power to public officers or a public or private corpora-
tion. *People* v. *Smith, supra*. And when the power is exercised, notice of
hearing being provided for, the taking of the land thereunder constitutes due
process of law. *People* v. *Smith, supra; Stuart* v. *Palmer*, 74 N. Y. 183.
These authorities seem to prove that the power exercised by the court does
not take the property in any sense, but that such taking is solely by virtue of
the statute. What the authority is that is exercised by the court, and how it
is obtained, is stated by Judge DENIO: "It is not necessary for the legisla-
ture, in the exercise of the right of eminent domain, either directly or indirectly,
through public officers or agents, to invest the proceedings with the forms or
substance of judicial process. * * * The appropriation of the property is
an act of public administration, and the form and manner of its performance
is such as the legislature shall, in its discretion, prescribe." *People* v. *Smith*,
21 N. Y. 599. Judge FINCH says: "Modes of procedure and forms of rem-
edy are within the legislative discretion." *In re Mayor, etc., of New York*,
99 N. Y. 582, 2 N. E. Rep. 642. Judge GRAY says: "A right is given to ac-
quire it [the property] *in invitum* * * * by proceedings before a tri-
bunal especially authorized and empowered by the legislature." *In re Union
El. R. Co. of Brooklyn, supra*. The utterance of authority, therefore, is that
the tribunal charged with the duty of conducting the proceedings required by
the act rests in the legislative discretion. The provision of the constitution
regulating the exercise of this sovereign power is found in article 1, §§ 6, 7. So
far as important here, section 6 reads: "Nor be deprived of * * * prop-
erty without due process of law; nor shall private property be taken for pub-
lic use without just compensation." No complaint is made but that the act
in question provides for making just compensation, and the authorities quoted
show that the act itself is due process of law. Section 7 provides: "When
private property shall be taken for any public use, the compensation to be
made therefor * * * shall be ascertained by a jury, or by not less than
three commissioners appointed by a court of record, as shall be prescribed by
law."

It is not denied that this court is a court of record, nor is it denied that
the language of this section, if unlimited, embraces this court, and would
confer jurisdiction of the proceeding. It is also clear that the language of
judicial construction, as we have seen, is sufficiently broad, if unlimited, to
embrace this court. It follows, therefore, that we must find, residing some-
where, a limitation upon this constitutional power and judicial utterance, or
jurisdiction is conferred. It is conceded that the limitation does not exist in
express words. What is claimed is that the quoted sections are limited and
controlled by section 12 of article 6 of the constitution, which provides that
the superior court of Buffalo, and other local courts, "are continued with the
powers and jurisdiction they now severally have, and such further civil and
criminal jurisdiction as may be conferred by law;" that this clause limits ar-
ticle 1, § 7, to courts of record having jurisdiction of the subject-matter, ter-
ritorially and otherwise. So far as the jurisdiction of the court under the
last-quoted section to entertain an action or judicial proceeding is concerned,
it has received judicial construction,—*Landers* v. *Railroad Co.*, 53 N. Y. 450,

where it is held that the construction to be placed upon the words, "and such further civil and criminal jurisdiction as may be conferred by law," relates and is limited to the object of the jurisdiction, and not to the territory or persons of suitors. In that case the cause of action arose outside the territorial jurisdiction of the court, the process was served outside, and the defendant did not reside therein. The court of appeals held that the city court of Brooklyn, named in section 12, was without jurisdiction of the person or subject-matter. The contention now is that the doctrine of that case is controlling here, and that the language of the article 1, § 7, "as prescribed by law," relates and is limited to a court of record having jurisdiction of the subject-matter, and as so qualified excludes this court from the tribunals having jurisdiction of this proceeding. If this were an ordinary action or special proceeding, instituted by a party who sought to invoke the judicial powers of the court and procure an adjudication to be made, with respect to the rights and interest of the parties in the land, it would, without doubt, fall within the construction laid down in the *Landers Case*, and the proceeding would be void for the reasons there assigned. It is to be observed, however, that the court in the *Landers Case*, as well as in the numerous cases which have followed it, speaks of the jurisdiction of local courts with respect to the power to adjudicate upon questions involved in a cause of action or proceeding between parties. In this proceeding no such question arises. There is here no cause of action to adjudicate upon, nor does the act aim to create one, nor does it take cognizance of a cause of action or judicial proceeding. The court takes no land or property by force of the exercise of any judicial power, and determines no right with respect to such taking beyond exercising supervisory control of a proceeding instituted by the sovereign power, and seeing that the delegated power to take, and the commissioners to award compensation, perform their duties as the act prescribes, and to perform such other duties as are incidental to the taking. The power thus exercised is not judicial, but administrative. In proceedings to punish for misconduct in refusing to pay a tax assessed upon personal property, involving a similar exercise of legislative power, the proceedings have been held to be administrative, and not judicial. *McMahon* v. *Palmer*, 102 N. Y. 189, 6 N. E. Rep. 400; *In re Fowler*, 53 N. Y. 62. . But, if the judicial power of the court be invoked to the fullest extent, the power to so invest it in this proceeding, I think, rests in the discretionary power of the legislature. The right to resume the possession of lands for a public purpose is a sovereign right, and all grants made to individuals are subject to its exercise. In an independent state this power is vested in the legislature as the representative of the people; its exercise is not dependent upon constitutions, but existed before they were made, and can be exercised whether the right be preserved therein or not. *Heyward* v. *City of New York*, 7 N. Y. 324; *Taylor* v. *Porter*, 4 Hill, 143. Under the constitution of our state, this sovereign right is preserved, but limited, and the power may not be exercised except upon compliance with its terms. These limitations are the observance of due process of law, and provision for compensation, the amount to be determined by a jury or three commissioners appointed by a court of record as prescribed by law. The limitation thus imposed is not alone a limitation upon the legislature, but upon the people as well. In *People* v. *Draper*, 15 N. Y. 549, it is said: "Independent of these limitations, the legislative power is omnipotent within its proper sphere. The legislature in this respect is the direct representative of the people, and the delegate and depository of their power. Hence the limitations of the constitution are not so much limitations of the legislature as of the power of the people themselves, self-imposed by the constitutional compact. When the court declares a law unconstitutional, it in effect declares that the sovereign power of the people has so far been abdicated by themselves. This consideration has led the courts, in all governments which are based on the

theory that all power resides in the people, to give a strict construction to compacts which deprive the people of this sovereign power. It will not be presumed that they intended to abdicate their power, unless they have so declared in express terms or by necessary implication." Judge Cooley had said; "Where the power which is exercised is legislative in its character, the courts can enforce only those limitations which the constitution imposes; not those implied restrictions which, resting in theory only, the people have been satisfied to leave to the judgment, patriotism, and sense of justice of their representatives." Cooley, Const. Lim. (5th Ed.) 155.

It is a familiar rule of law that power delegated by one person to another is to be strictly construed and limited to its express terms. *Craighead* v. *Peterson*, 72 N. Y. 284. Where large general powers exist, the instrument which takes them away must be subject to like interpretation. In ordinary judicial proceedings, this court acts under and by virtue of the authority conferred by the judiciary article of the constitution. In this proceeding it acts by virtue of an authority entirely independent of it. No limitation upon the power of the legislature to exercise the right of eminent domain is found in the judiciary article, nor is any right preserved therein relating thereto. The power existed before the constitution. As restricted, it provides that the commissioners to award compensation may be appointed by a court of record, as prescribed by law. The legislature designates the court upon which it desires to confer the power of appointment in the particular case, and there is no express limitation or restriction in the constitution in respect to the court which the legislature is required to select, except that it be a court of record. As the power of the legislature is absolute to take the lands, and as the constitution is for the protection of the property owner, such limitation upon the power, and such only, as is prescribed in the article should be heeded. The constitutional power to appoint the commissioners necessarily includes such power and jurisdiction over their proceedings as may be prescribed by the act authorizing their creation, or, in other words, "as may be prescribed by law." The legislative power to designate the particular court authorizes making of such provisions as it may deem fit and proper for the supervision of the commissioner's proceedings, and to direct to whom the awards shall be paid when made. Within the authorities cited, this construction is not strained; as it should receive a strict construction, that which places the least limit upon the exercise of the power should obtain. These views would seem to find support in *Re Mayor, etc., of New York,* 99 N. Y. 569, 2 N. E. Rep. 642. That was a proceeding to take lands for a public park lying partly in New York city and partly in Westchester county. Jurisdiction to entertain the proceedings was vested in the supreme court of the first department, while the land to be taken in Westchester county lay within the second department. Objection was made that the act was in violation of article 3, § 18, of the constitution, which prohibits change of venue in civil or criminal cases. The court said: "The venue of such proceeding falls, of course, within the legislative discretion." If this had been a judicial proceeding, subject to the exercise of judicial power alone, it is difficult to see why it was not a violation of the constitution, but, being the exercise of the power of eminent domain, it was within the discretion of the legislature to prescribe such tribunal as it chose. In *Re Application of Church,* 92 N. Y. 1, the precise question herein announced was decided, and the words "as prescribed by law" construed. The court says: "The jurisdiction of the supreme court to appoint the commissioners of estimate is assailed upon the ground that its sole authority to act came from the mandate of the county board, which was ineffectual for that purpose. But the constitution gave to the supreme court general jurisdiction in law and equity, and by the specific provision, requiring the damages for property diverted to the public use to be ascertained by a jury or commissioners appointed by a court of record, conferred upon all such courts

the necessary jurisdiction. The mode and manner of its exercise was put within the control and regulating power of the legislature, because it was to be exercised 'as prescribed by law.' In that respect the legislature could not delegate its authority except by the permission of the constitution. Such permission was given. Article 3, § 23. The legislature was allowed to transfer a power of local legislation, so far as it should deem necessary or prudent, to the county boards. * * * Thereby the local legislature, acting within the authority conferred, could create the occasion for and call into exercise the power of the supreme court to appoint commissioners, and that appointment, when made, was 'as prescribed by law.' The county board did not create the jurisdiction. That came from the fundamental law. Article 1, §§ 6, 7." These views lead to a determination that the court possesses jurisdiction of the proceedings. The motion to dismiss, as well as the motion to limit the exercise of jurisdiction to lands within the territorial limits of the city, is denied, and motion for the confirmation of all the reports is entertained.