care and caution as to the condition of the walk in question that it did to a pedestrian walking upon the same. The jury might well have inferred, however, from this charge, that the municipality, not owing the same duty, owed to the plaintiff a greater duty than it owed to a pedestrian. But, even if the inference were legitimate that the municipality owed to the plaintiff a lesser duty, in the way in which the charge was made in answer to the request, we are satisfied that the jury were not made clearly to understand that the municipality owed any less duty to the plaintiff than the duty to keep the walk in a reasonably safe condition for bicycle riding. The jury had been instructed that that was the measure of the defendant's duty. This was error. To repair the mischief in such error, it should have been so clearly corrected as to satisfy the court that the jury have not been thereby misled. Of this we are not satisfied in the case at bar, and for this error we think the defendant is entitled to another trial. It thus becomes unnecessary to examine the other objections to the judgment raised by the defendant.

Judgment and order reversed, and new trial granted, with costs to the appellant to abide the event. All concur.

---

## McCUE v. BOARD OF SUP'RS OF MONROE COUNTY.

(Supreme Court, Appellate Division, Fourth Department. November 27, 1899.)

TAXATION—IMPROPER ASSESSMENT—VOLUNTARY PAYMENT—RECOVERY.

Where plaintiff resided for several years on property which he alleged belonged to his mother, and which was improperly assessed to the estate of his father, and, with full knowledge of the manner of assessment, voluntarily paid the taxes on such property, without its appearing that there was a demand on him for the same, or that he was not paying them for the owner, it is to be inferred that he paid such taxes because he was interested in, or was the owner of, the property, or because of an agreement with the owner; and under Laws 1892. c. 686. § 16, providing that a county court may compel the board of supervisors to refund any taxes collected under an illegal or improper assessment, he cannot recover back the amount so paid.

Smith, J., dissenting.

Appeal from Monroe county court.

Application by Frank McCue for an order to the board of supervisors of Monroe county to refund taxes paid by him under an improper assessment. From an order granting the application, the board of supervisors appeal. Reversed.

On the 17th day of February, 1898, the petitioner presented his petition, which was duly verified on the 15th day of February, 1898, to the board of supervisors of Monroe county, asking that certain taxes paid by him for the years 1887 to 1895, both inclusive, amounting to the sum of $57.52, be refunded to him, under the provisions of section 16, c. 686, Laws 1892. The petition alleged, in substance, that Henry McCue, the father of the petitioner, died at Brockport, N. Y., on the 12th day of August, 1880; that at the time of his death he was the owner of a house and lot in said village; that from the time of his death until and including the year 1895 said house and lot had been assessed by the assessors of the town in which said property was situate, for general state and county taxes, to the "estate of Henry McCue"; that the pe-

.titioner resided upon the property during all of said time; and that from the year 1887 to 1895, both inclusive, the petitioner paid the taxes so assessed against said property. It was also alleged that Henry McCue left a last will' and testament, which was admitted to probate, in and by which he devised the house and lot in question to one Adaline McCue, the mother of the petitioner, and that she during all the times in question was the owner and occupant of the property. The board refused the petitioner's request, and thereafter, and on the 18th day of November, 1898, by a communication in writing, the petitioner made formal demand upon the board of supervisors that it refund' the taxes so paid by him. The board failed to comply with the demand, and on the 6th day of March, 1899, the petitioner presented his petition, which was. duly verified on the 18th day of February, 1889, to the Monroe county court. in which he asked that an order might be made directing the board of supervisors of Monroe county to refund the taxes paid by him as aforesaid, with: interest, and pay the costs of the proceedings. It was alleged in said petition, in addition to the allegations contained in the petition presented to the board of supervisors, that such petition had been presented, and that payment had been demanded of the board and refused. To the petition presented to the county court the board of supervisors made answer, in which: First. It admitted that the assessment was made, and that the taxes were paid, as alleged in the petition. Second. It alleged that the claim for the taxes paid during the years 1887, 1888, and 1889 were barred by the statute of limitations, because more than 10 years had elapsed before demand to refund 'the same. Third. The answer alleged that Frank McCue, the petitioner, was the owner of' the house and lot in question at the time he paid the taxes thereon, and that the payment of the same by him was voluntary and proper. The answer further alleged that by the provisions of chapter 310 of the Laws of 1898 "the said assessments set forth in the petition were legalized and made valid." No evidence was taken before the county court, and no further or additional facts appeared; and upon those facts the court made an order directing the board of supervisors to refund the amount of the taxes paid by the petitioner during. the six years prior to the demand of the petitioner, which amounted to $18.82. and directing the payment of $70.25, the costs of the proceeding. From that order this appeal is taken.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

P. Chamberlain, for appellant.
Delbert A. Adams, for respondent.

McLENNAN, J. Concededly, during all the years in question the petitioner resided upon the premises. He paid the taxes assessed, and only the amount which was properly chargeable against the property, voluntarily, and year after year, as they became due,. without any coercion whatever, and with full knowledge of all the facts,—that the assessment was illegal in form, and that the payment of the tax under such assessment could not be enforced. against the property or the owner. It does not appear that any demand of payment of the tax was made upon the petitioner or· upon any one else, or that the fact that the assessment was made· in any manner caused damage or inconvenience to the petitioner or to the owner. From all the facts and circumstances, it is a· fair inference that the petitioner was the owner of, or had a beneficial interest in, the property in question, and that he was legally bound to pay the taxes assessable against said property, either· because of such ownership or interest, or because of a valid agreement with the owner so to do. Under such circumstances, is the· petitioner entitled to have the taxes so paid refunded to him? If'

the real estate of A. is assessed to B. by mistake of the assessors, and A., with full knowledge of the mistake, voluntarily pays the amount of the tax, and only the amount which he could be legally required to pay except for such mistake, we know of no rule of law which will enable A. to recover back the amount so paid. If we assume that the petitioner was not the owner of, and had no interest in, the premises, but that they were owned by his mother, as stated in his petition to the board of supervisors, which statement was omitted from the petition presented to the county court, the rights of the petitioner are in no manner changed. If A. voluntarily pays the taxes upon the property of B., or discharges any other obligation of B., intentionally and with full knowledge of all the facts, A. cannot recover back the amount so paid by him; and it is entirely immaterial whether such payment was made by A. with the knowledge or at the request of B. In the case at bar, as before said, it does not appear that the payments were not made by the petitioner at the request of the owner of the premises, and in pursuance of a valid agreement on his part to do so.

It is said that, under the form of the assessment in question, neither the petitioner nor the owner was liable. Assuming that the assessment was illegal, and that payment could not be enforced under it, the property was liable to be taxed, it was the duty of the assessors to assess it, and it was the duty of the owner to bear his proper burden of taxation. Does the mistake or the illegal act of the assessors prevent the owner from being honest, and paying to the state the amount which under the law he should pay? There is no such rule of law. We think it equally as obvious that one person may make irrevocable payment of the debt of another, even when such debt is payable to the state, when such payment is made and received in good faith, and with full knowledge of all the facts. Peter Jones cannot pay the taxes properly assessable against his property year after year, and then recover them back, because, upon the assessor's books, to his knowledge and with his assent, the property was assessed in the name of John Jones during all those years, and in that manner effectually relieve such property from its proper burden of taxation. The petitioner is in the attitude of saying:

"Ten years ago I went to the proper authorities of the town of Sweden, in the county of Monroe, to pay the taxes upon the property owned by my mother. I knew the property was subject to taxation; that the amount assessed against it was correct. I discovered that such property was assessed to the estate of my deceased father. I said in substance: 'The form of the assessment is entirely immaterial. My mother owes the tax, and, while payment could not be compelled under such form of assessment, the mistake can be rectified, and she compelled to pay the taxes next year. I will not, and she does not, require that the correction be made. Here is the money in payment, given to me for that purpose by my mother, or, perchance, it is a part of the proceeds of the property which I am occupying.'"

And under those circumstances the payment is received and receipted for. The same thing occurs year after year for the period of 10 years, and until it is too late to enforce against the property

any of the taxes so paid, and which were legally chargeable against it. The petitioner then demands back the taxes so paid by him, and by this proceeding seeks to compel such repayment. To state the proposition plainly, the contention is that if a man discharges by payment a legal, moral, and equitable obligation, he may recover back the amount of such payment, because the obligation, when presented to him, was not in legal or statutory form.

The case of Tripler v. City of New York, 125 N. Y. 617, 26 N. E. 721, was an action brought to recover back an illegally assessed tax paid by the plaintiff. In the course of the opinion, Peckham, J., says (page 627, 125 N. Y., and page 723, 26 N. E.):

"He [the plaintiff] has the right to commence his action to set aside the apparent lien of the assessment, as a cloud upon his title, and to enjoin its collection, and he may do this before any step is taken towards enforcing the assessment. With such knowledge and with such right, if a person choose nevertheless voluntarily to pay, it is no hardship to hold he cannot recover it back. In such case no reason exists for permitting him to pay it with full knowledge that the assessment is utterly void, and in the absence of any attempt on the part of the city to enforce payment, and in then allowing him to sustain such an action as this to recover back the money so paid. If the owner of the judgment, or the city, in case of the assessment, sought to enforce payment, the party might pay, even with knowledge, and still recover back." McKibben v. Oneida Co., 25 App. Div. 361, 49 N. Y. Supp. 553; In re Baumgarten, 39 App. Div. 174, 57 N. Y. Supp. 284.

In the case at bar it is not alleged or shown that there was any attempt to collect the assessment in question against the petitioner or any one else. In the case of Peyser v. City of New York, 70 N. Y. 497, it was assumed that the payment was made in ignorance of the fact, and in the belief that the assessment was really as valid as on its face it appeared. Many cases may be cited where payment was made in ignorance of the fact that the assessment was illegal or by coercion, where it has been held that recovery can be had. Purssell's Case, 85 N. Y. 330; Diefenthaler v. City of New York, 111 N. Y. 331, 19 N. E. 48; Strusburgh v. Same, 87 N. Y. 452; Adams v. Supervisors, 154 N. Y. 620, 49 N. E. 144. In the case of Bruecher v. Village of Port Chester, 101 N. Y. 240, 4 N. E. 272, the assessment was valid upon its face; and the court based its decision that the plaintiff could recover upon the ground that a valid warrant was out for its collection, and hence there was coercion in fact. In Jex v. City of New York, 103 N. Y. 536, 9 N. E. 39, the complaint alleged that the plaintiff was ignorant of the defect in the proceedings, and was required to, and did, pay the amount of the assessment under coercion of law. Many other similar cases are referred to in the opinion of Judge Peckham in Tripler v. City of New York, supra; McMahon v. Palmer, 102 N. Y. 176, 6 N. E. 400. In the case at bar the defect in the assessment was apparent,—could be ascertained by an inspection of the assessment roll,—and there is no allegation or suggestion that, when payment was made, it was not made with full knowledge of such defect; and it does not even appear that the tax so assessed was ever demanded of the petitioner, or from Adaline McCue, his mother, prior to the payment by him. The

position of the petitioner is not tenable, unless made so by section 16, c. 686, of the Laws of 1892, which provides:

"Correction of Assessments, and Returning and Refunding of Illegal Taxes. Any such board may correct any manifest clerical or other error in any assessment or returns made by any one or more town officers to such board, or which may or shall have properly come before such board for its action, confirmation or review, and cause to be refunded to any person the amount collected from him of any tax illegally or improperly assessed or levied, and upon the order of the county court it shall refund any such tax."

It was held in the case of Adams v. Supervisors, supra, that an assessment made and a tax levied upon a farm against the "Est. Mrs. L. M. Wilcox" was absolutely void; and assessments in that form have repeatedly been held illegal and void by the courts of this state. In that case, however, it appeared that the farm had been sold for unpaid taxes, and that the petitioner, who was the executor of Wilcox, and had a power of sale under the will, being desirous of disposing of the farm, and having occasion to obtain an abstract of title, "discovered that said taxes were unpaid, and that the farm had been sold for taxes, and that the petitioner thereupon paid the taxes, as he was compelled to do in order to make sale of the farm, and that such payment was not made voluntarily." Under those circumstances, it was held that the petitioner in that case was entitled to an order of the county court directing that the amount of the tax paid be refunded. In the case of Bruecher v. Village of Port Chester, supra, it appeared that the plaintiff, finding that a warrant for the collection of taxes on his premises had been issued, and that the plaintiff threatened to sell the same for the amount of the tax, and having before that time sold his premises under contract to convey the same free from all incumbrances, was unable to do so by reason of the assessment, which was an apparent lien and cloud upon the premises; and thus he was compelled, in order to complete the conveyance of his premises, to pay, and did pay, the county treasurer. In that case it was held that the payment was not voluntary, and that he was entitled to a recovery. We think no case can be found in which it has been held that the county court was authorized to refund taxes paid under the circumstances disclosed by the record in this case. The assessors had jurisdiction of the subject-matter. As before said, the property in question was liable to taxation. It was the duty of the assessors to tax it, and by mistake the form of the assessment was such as to make their acts in that regard void. That did not authorize the recovery of the amount of the assessment, which was paid, with full knowledge of such facts, to discharge an honest obligation. Section 16, c. 686, of the Laws of 1892 does not, and was not intended to, change the well-established rules which govern in case of payments voluntarily made with full knowledge of the facts. The purpose of the act was to provide a summary and more convenient remedy for the enforcement of the rights which then existed because of the assessment of illegal taxes, and not to change the rules of law applicable thereto, or create new or additional rights.

The statute is a useful one. It affords an inexpensive and summary means of relief when taxes upon property are paid where the property or the owner is exempt from taxation; where the tax itself or its purpose is illegal; where the assessors have no jurisdiction to make the assessment; where the assessment is illegal in form, and the payment is not voluntary; where the tax is paid by mistake, or under such circumstances that justice and equity require that it shall be refunded. But the statute does not prevent, and was not intended to prevent, a person from discharging an honest obligation by payment, irrevocably and beyond recall, if such was his intention when the payment was made; and so notwithstanding the payment was made to town officers to discharge an honest obligation to the state. If this is not so, then A. may honestly pay his just proportion of taxes year after year upon an illegal assessment, but which is entirely satisfactory to him, and with knowledge of the illegality and of all the facts; and, in case of his death, his executor or administrator may recover back the amount so paid by the deceased, and effectually relieve such property from its just burden of taxation. Clearly, if A. in his lifetime could recover back the amount of the taxes paid by him under such circumstances, in case of his death his executor or administrator could compel repayment on behalf of his estate. We think the statement of the proposition demonstrates the absurdity and fallacy of the petitioner's contention. It follows that the order appealed from should be reversed, with costs.

Order reversed, with $10 costs and disbursements, and motion denied, with $10 costs. All concur, except SMITH, J., who dissented, with opinion.

SMITH, J. (dissenting). In the case of Adams v. Supervisors, 154 N. Y. 619, 49 N. E. 144, it is held:

"The provision of the county law (Laws 1892, c. 686, § 16) which confers upon the board of supervisors power to refund to any person the amount of an illegal tax collected from him, and upon the county court power to direct that it be refunded, was intended for the benefit of a party who pays an illegal tax voluntarily, as well as one who pays under duress. It is a general provision for the benefit of any one from whom an illegal tax has been collected."

In that case the plaintiff, the executor of Lydia M. Wilcox, paid a tax assessed to the "estate of Mrs. L. M. Wilcox." By the will he was invested with power to sell. He paid the tax to effectuate a sale of the land, which the purchaser refused to complete unless the tax was paid. After having paid the same, he applied to the board of supervisors of Monroe county to refund to him the tax, under chapter 686 of the Laws of 1892. This was refused. He then applied to the county judge for an order compelling them to refund to him said tax, which application was denied. Upon appeal to the appellate division, this court held (reversing the order of the county judge) that, inasmuch as the payment was not voluntary, he was entitled to recover the same under the act in question. Upon appeal to the court of appeals, the rule of law as above stated was held. Judge O'Brien, in writing for a unanimous court, discusses the ques-

tion whether the payment of the tax was voluntary or under compulsion. He says:

"All that the statute requires a party who makes such an application to the supervisors to show is that the county, through its proper officer, had collected from him a tax illegally or improperly assessed or levied. It would not be very difficult to show that the payment in this case was compulsory; but, whether it was or not, the executor had the right to have the money refunded, since the statute was intended for the benefit of a party who pays an illegal tax voluntarily, as well as one who pays under what the law terms 'duress.' This proceeding was not governed by the technical rules that apply to actions at law to recover money voluntarily paid, or to suits in equity to remove a cloud upon title. The statute furnishes a convenient and summary remedy which enables the county to restore, without litigation or expense, what it ought not to retain; and a citizen who has paid an illegal tax, without waiting to have his property advertised and sold, to obtain justice. The benefits of the statute are not confined to parties who have paid an illegal tax upon compulsion, but extend to all persons who have paid taxes that they are not legally bound to pay."

It is difficult to see how words could have been chosen to express more clearly the holding of the court of appeals that it is no defense to this application that the payment was voluntary. It is argued that in that case there were facts to show that that payment was not a voluntary payment, and that the decision of the appellate division had been put upon that ground. Granted. But the court of appeals has chosen to place its decision upon a different ground. That it has passed over the ground of the decision in the court below, and has placed its decision upon the broader ground that the statute was made for those who paid voluntarily as well as those who paid by compulsion, makes its decision the more emphatic. It is to me a new rule of interpretation to hold that a decision is not an authority for the rule of law upon which it is expressly based, because it might have been placed upon a different ground.

It is further argued in the prevailing opinion in this case that, because the tax was in fact paid by the occupant of the premises, he is not within the intended protection of the statute. The logic of this proposition I am unable to follow. A man, because he is the occupant of land owned by a resident taxpayer, is in no way liable to pay the tax. It is said, however, that it is inferable that he had some interest in the premises, as owner or otherwise, which led him to pay. This inference is just as proper in every case where a tax, legal or illegal, is paid. But assume, for the argument, that this plaintiff was the owner. He still comes within the express provisions of the act. He is entitled to recover under the act the amount of any tax collected of him "which has been illegally or improperly assessed or levied." In Adams v. Supervisors, supra, the court distinctly recognizes the right of an owner to recover back an illegal tax which has been collected of him, where it says:

"The statute furnishes a convenient and summary remedy, which enables * * * a citizen, who has paid an illegal tax without waiting to have his property advertised and sold, to obtain justice."

Of the wisdom of the statute we are not to judge. The cases cited in the prevailing opinion where actions were brought to recover taxes

paid upon illegal assessments are not in point. The rule of law in such cases is not questioned. As held in the Adams Case, this statute was intended to assure to the taxpayer greater rights than he had in action at law. That the tax was illegally assessed is conceded. That the plaintiff paid it is conceded. These facts satisfy the conditions of the statute, and assure to the plaintiff its benefits. I think the decision below was right.