J. D. YEOMANS *et al.*, Appellants, v. J. N. RIDDLE *et al.*, Appellees.

1. **Drainage:** REPAIRING COUNTY DITCH: POWER OF BOARD OF SUPER-VISORS: PROCEDURE: CHANGE IN ASSESSMENT. Under the provisions of section 1214 of the Code the board of supervisors has authority to provide at a special meeting for the reopening, deepening and repairing of a county ditch, without a petition therefor being presented by the adjacent property owners, nor provision being made for the division of the work into sections, nor fixing the time for its completion, nor advertising the letting thereof, as required by sections 1207 to 1213 of the Code in case of the original location and construction of such a ditch; and such board may, after the original assessment for the cost of such repairs, add to the list of lands to be assessed without the consent of the appraisers.

2. ———: ———: ———: EXTENSION INTO ADJOINING COUNTY. In the prosecution of such improvement the board of supervisors is not limited in its operations to the line of the original ditch, but may obtain new material from other quarters, build embankments or walls or a new channel to straighten the old one, when necessary, and may even extend the ditch into an adjoining county in accordance with the provisions of chapter 121 of Acts of the Seventeenth General Assembly, as amended by chapter 81 of Acts of the Eighteenth General Assembly.

3. ———: ———: ———: NOTICE OF ASSESSMENT. The property owners adjacent to such ditch are not entitled to notice of the assessment made upon their lands because of such improvement, and to an opportunity to contest the same, as their interests are fully protected by the right of appeal given them under sections 1214 and 1216, of the Code.

4. ———: ———: ———: ———: CONSTITUTIONALITY OF STATUTE. Such assessment being made in the exercise of the taxing power of the state, with provision for an appeal, section 1214 of the Code is not unconstitutional, as being in conflict with section 9 of article 1 of the state constitution.

*Appeal from Monona District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

FRIDAY, DECEMBER 18, 1891.

CERTIORARI to review the proceedings of the board of supervisors of Monona county to repair, deepen, and improve a county ditch, and to assess the cost thereof upon landowners along and in the vicinity of the ditch. A demurrer to the plaintiffs' petition was sustained, and from that ruling they appeal.—*Affirmed.*

*Joy, Hudson, Call & Joy,* for appellants.

*H. Chrisman* and *Wright & Hubbard,* for appellees.

BECK, C. J.—I. As the only questions in the case arise upon a demurrer to the petition, it becomes necessary, for a correct understanding of the case, to set out in full these proceedings. They are as follows:

"*Petition:* The plaintiffs, for cause of action against the defendants, state: That the plaintiffs are all taxpayers of Monona county, Iowa. That they are the several owners of a large number of tracts of land in said county, lying along and in the vicinity of a certain ditch or excavation known as the 'Persons Ditch.' That the above-named defendants are the members of the board of supervisors of said county. That on or about the second day of October, A. D. 1889, said board of supervisors levied and assessed, or attempted to levy and assess, a tax upon each of the aforesaid tracts of land of the plaintiffs, lying along or in the vicinity of said Persons ditch, for the payment of costs and expenses of reopening, repairing, and deepening said ditch, and for certain alleged improvements upon the same, and made an order directing the auditor of said county to carry said assessment against the lands of plaintiffs upon the tax lists of said county for the year of 1889. That said board of supervisors exceeded its jurisdiction, and other-

wise acted illegally, in making said order and levying and assessing said tax upon the lands of the plaintiffs, as aforesaid, and that said levy and assessment, and the action and proceeding of said board of supervisors making, ordering, and directing the same, is and was without jurisdiction, and null and void, for the following reasons, to wit:

*First.* Said board of supervisors had no jurisdiction to reopen, deepen, or repair said ditch, or to cause the same to be done, or to make any order for the reopening, deepening, repairing, or improving of the same, and all the acts, orders, and proceedings of said board of supervisors, defendants, in relation thereto are and were wholly unauthorized, illegal and void for that: (*a*) No petition for the reopening, deepening, or repairing of said ditch, or for making any of the alleged improvements thereon, signed by a majority of persons resident of said county, owning lands along or adjacent to such ditch, was ever filed with the auditor of said county, or presented to or heard by said board of supervisors, and no bond was filed, as provided by section 1208 of the Code of Iowa. (*b*) The petition, if any, for reopening, deepening, or repairing said ditch, was not placed in the hands of the county surveyor or a competent engineer, and no return was made by such surveyor or engineer, as provided by law. (*c*) No notice in writing of the pendency and prayer of any petition for reopening, deepening, or repairing said ditch, or the session of the board of supervisors at which the same was heard, was ever at any time served upon the plaintiffs or the owners of land lying upon or along the route of said ditch; nor was any right to reopen, deepen, or repair the same acquired, as provided by law. (*d*) The order for the reopening, deepening, and repairing said ditch was made and entered at a special session of said board of supervisors, held more than ten days after the alleged request, if any, was made therefor and filed, and no notice of said special

session, or the purpose for which the same was held, was ever given or published as provided by law. (e) Said board of supervisors did not divide said ditch into sections and prescribe the time within which the work on each section should be completed; and the notice of the letting of the work upon said ditch, provided by section 1212 of the Code of Iowa, did not divide the same into sections, specifying the kind and amount of work to be done on each section, and the time fixed for the completion of the same as provided by law. (f) After the original assessment or report of the appraisers had been duly signed and filed, a long list of lands, not contained or included in said original assessment or report, was added or attached thereto, without the knowledge or consent of said appraisers, and after their duties as such had been fully discharged and performed, and their office had expired and ceased, which said list is the sole basis of a large portion of the tax so levied and assessed upon and against the lands of the plaintiffs.

"*Second.* A large part of the work, for the payment of which said tax was levied and assessed, was done and performed at places where said board of supervisors had never established, or attempted to establish or locate, a ditch, and a large portion of the same was for work ordered, or alleged to have been ordered, by an individual member of said board of supervisors, without the same ever having been ordered by said board of supervisors at any session thereof, and about two miles of extension of original ditch into Harrison county was made at great expense, and plaintiffs' lands in Monona county assessed for same.

"*Third.* The appraisals of benefits for the reopening, deepening and repairing of said ditch, and the levy and assessment of the tax for the same upon the lands of the plaintiffs, as aforesaid, were both made without any notice thereof to the plaintiffs and parties whose lands were so assessed and taxed, and without opportunity being given them to be heard in relation

thereto in defense of their rights, a copy of the commission being hereto annexed, marked 'Ex. A,' and no notice or opportunity was at any time given to any of the plaintiffs to appear before the appraisers or said board of supervisors, and object to the appraisal or the assessment and levy of said tax, and said taxes in the aggregate amount to about six thousand dollars.

"*Fourth.* The aforesaid appraisal and tax, and the assessment and levy of the same, and all the acts, orders, and proceedings of said board of supervisors in relation thereto, or in any manner connected therewith, are in conflict with article 1, section 9, of the constitution of the state of Iowa, and are unconstitutional, null and void, for that said proceedings were had, and said appraisal and assessment, and the levy of said tax, and the order of said board of supervisors directing the auditor to carry the same upon the tax list against the lands of the plaintiffs, were all made without notice to the plaintiffs and parties against whose lands said tax was levied and assessed, and without any opportunity being given them to appear and be heard in reference thereto, and that the plaintiffs will thereby be deprived of their property without due process of law. See Exhibit A, attached hereto as part of this petition.

"*Fifth.* That section, 1214 of the Code of Iowa, under which said proceedings were had, and the aforesaid appraisal and order and the levy and assessment were made, is in conflict with article 1, section 9, of the constitution of the state of Iowa, in that it authorizes said board of supervisors to deprive the plaintiffs of their property without due process of law, because the same authorizes the appraisal of benefits, and the assessment and levy of a special tax, without notice to the parties whose property is sought to be taxed thereby, and without opportunity being given the parties affected by said tax to be heard in reference thereto. That the plaintiffs have no plain, speedy, and adequate remedy for the injury done them by said

illegal acts of the defendants, except by *certiorari.* Wherefore the plaintiffs pray that a writ of *certiorari* issue from this court, commanding the said defendants herein to certify fully to this court a transcript of the records and proceedings in reference to reopening, deepening, and repairing said Persons ditch, or ordering the same to be done, and in assessing and levying a tax upon the lands of the plaintiffs lying along and in the vicinity of said ditch, for the payment of the costs and expenses of reopening, deepening, and repairing the same, and ordering the auditor of said county to carry the same on the tax lists of said county for the year 1889, together with all the facts relating to the same, as fully as they may appear upon the records of said board of supervisors; and that said proceedings may be annulled, set aside, and held for naught.''

To this petition the defendants filed the following demurrer: ''Now come the defendants in the above entitled action, and, demurring to the petition of the plaintiffs filed herein, state that the facts stated in said petition do not entitle the plaintiffs to the writ or relief therein demanded, for that: (1) The grounds set forth in the first division of said petition as grounds defeating the jurisdiction of the said board of supervisors are not in any manner applicable to proceedings for the reopening and repairing of a ditch, but relate solely to the location and establishment of a ditch, and that the proceedings therein set forth are not required for the reopening or repairing of a ditch. (2) That in the second division of said petition no grounds are stated assailing the jurisdiction of said board, or the legality of its action; the said division questions only the levy of some portions of the tax, without specifying what portions are so questioned. (3) That no sufficient grounds assailing the jurisdiction of said board, or the legality of its action, are set forth in the third, fourth, and fifth divisions of said petition, but the plaintiffs had in the matter, therein complained

of, a plain, speedy, and adequate remedy at law by the right of appeal from the proceedings of said board, and its action in levying said assessment upon the lands of plaintiffs." This demurrer was sustained, and, the plaintiffs electing to stand on their petition, judgment was rendered for the defendants, and the plaintiffs' petition was dismissed.

II. The Code, as amended by subsequent legislation (see Miller's Code, pp. 312–314), provides (section 1207) that the board of supervisors of counties having a population of five thousand shall have authority to locate and cause to be constructed levees, ditches or drains, or change the direction of water courses, when it will be conducive to public health, convenience or welfare. The proceedings to be pursued in the exercise of this authority are prescribed in the following language:

*1. DRAINAGE: repairing county ditch: power of board of supervisors: procedure: change in assessment.*

"A petition signed by a majority of persons resident in the county, owning land adjacent to such improvement, shall be first filed in the office of the county auditor, setting forth the necessity of the same, the starting point, route and termini. A bond shall be filed in said office with sufficient sureties, to be approved by the auditor, and conditioned to pay all costs and expenses incurred in case the supervisors refuse to grant the prayer of the petition. The auditor shall thereupon place a copy of said petition in the hands of the county surveyor, or a competent engineer, who shall take with him the necessary assistants, and proceed to make a survey of the proposed [levee], ditch, drain, or change in the direction of the water course, and return a plat and profile of the same to the auditor. Such return shall set forth a full and detailed description of the proposed improvement, its availability, necessity, and probable cost, with a description of each tract of land owned by different persons through which the proposed improvement is to be located, how it will

be affected thereby, and its situation and level, as compared with that of adjoining lands, together with such other facts as he may deem material. The county auditor shall immediately thereafter cause notice in writing to be served on the owner of each tract of land along the route of the proposed [levee], ditch, drain or change in the direction of such water course, who is a resident of the county, of the pendency and prayer of said petition, and the session of the board of supervisors at which the same shall be heard, which notice shall be served ten days prior to said session, in the same manner that original notices are required to be served. In case any such owner is a nonresident of the county, such notice shall be published for two consecutive weeks in some newspaper published in the county."

"Sec. 1209. The supervisors at the session set for the hearing of said petition shall, if they find the preceding section to have been complied with, proceed to hear and determine said petition; and, if they deem it necessary, shall view the premises; and, if they find such [levee], ditch, drain, or change in the direction of the water course to be necessary, and that the same will be conducive to the public health, convenience, or welfare, and no application shall have been made for compensation as provided in the next section, shall proceed to locate and establish such [levee], ditch, drain or water course on the route specified in the plat and return of said county surveyor or engineer. But, if any application has been made, further proceedings shall be adjourned to the next regular session, and the county auditor shall forthwith proceed to appoint appraisers to assess and determine damages and compensation of such claimant, who shall proceed in the manner as provided by law for the assessment of damages in the opening of highways; and the compensation so found and assessed in favor of said claimant shall be paid, in the first instance, by the parties bene-

fited by such improvement, or secured to be paid upon such terms and conditions as the county auditor 'may deem just and proper; and the said supervisors shall, at the next regular session after such compensation shall have been assessed and paid or secured as aforesaid, proceed to locate and establish such [levee], ditch, drain, or water course, as hereinbefore provided.''

Section 1210 prescribes proceedings to be had to obtain compensation for land taken in the construction of these works. Section 1211 declares that, when the supervisors ''shall have established the levee, ditch, drain or water course, [they] shall divide the work into sections, not less in number than the number of the owners of the land through which the work is located, and shall prescribe the time within which the work shall be completed.'' Section 1212 makes provisions as to the advertising of the work, the payment thereof, etc., and section 1213 prescribes for fees and costs, and the payment thereof. Section 1214 is as follows:

''Whenever any such ditch, drain, or change in the direction of any water course shall have been located and established as provided in the preceding section, or when it shall be necessary to cause any such ditches, drains, or water courses to be reopened and repaired, the auditor shall commission and appoint six disinterested freeholders of the county, not interested in a like question, who shall, within twenty days after such appointment, personally inspect and classify, as 'dry,' 'low,' 'wet,' or 'swamp,' all land benefited by the location and construction of such ditch, drain, or water course, or the repairing or reopening of the same, and shall make an equitable apportionment of the costs, expenses, costs of construction, fees and compensation for property appropriated, or damages sustained by the construction of any such ditch, drain, change of direction of such water course, or of repairing and reopening the same, and make report thereof in writing to

the board of supervisors, which apportionment shall accrue and be assessed among the owners of the land benefited by the location, construction, or the reopening and repairing of such ditch, drain, and water course, in proportion to the benefit of each of them, through, along the line, or in the vicinity of, whose lands the same may be located, constructed or reopened and repaired, respectively, and the same may be levied upon the lands of the owner so benefited, in said proportions, and collected in the same manner that other taxes are levied and collected for county purposes, and the amounts so assessed and collected shall be paid out of the county treasury, from the funds collected for that purpose, on the order of the county auditor; and said commissioners shall receive for each day's service, when so engaged, two dollars, to be paid out of the funds so collected.   *   *   *   Nothing in this chapter contained shall be construed so as to prohibit any land-owner from appealing from the order of the board, in assessing his land for any of the purposes mentioned in this section, to the circuit court of the county, in the same manner that appeals are taken in the location of highways, nor shall the same be construed so as to prohibit the maintenance of an action for the recovery of any taxes erroneously or wrongfully assessed, for any of the purposes mentioned in this section; and, in order to show that such assessment was erroneous or wrongful, it shall be necessary to prove that such lands so assessed were not benefited by the location, construction, or maintenance of such ditch, drain, or water course." Section 1215 prescribes that records of the proceedings shall be kept by the auditor. Further provisions are in this language: "Sec. 1216. The petitioners, or any of them, or the applicant for compensation for land taken, or for damages sustained by reason of the change of the direction of any water course, may appeal from the order locating and establishing such [levee], ditch or drain, or changing the

direction of such water course, or refusing to do so, and from the amount allowed as damages, by pursuing the same method provided for appeals from assessment of damages in the location of highways, and the auditor shall make out transcripts as provided in appeals taken from the assessment of damages in case of highways."

The foregoing presents all statutory provisions applicable to the questions raised in the case. We shall proceed to notice the objections to the proceedings of the board of supervisors made in the petition of the plaintiffs, so far as they are argued by their counsel.

III. It is complained that no petition for the reopening, deepening, or repairing the ditch was presented to the board of supervisors, no notice of the proceeding or the petition was given, and the supervisors did not divide the work into sections, fix the time for completing the work, nor advertise the letting thereof, and the order for the work was made at a special session of the board. It is sufficient to say that these objections are not based upon any violation of the statute, for it does not prescribe that, in proceedings for the reopening or repairing of a ditch, a petition shall be presented asking that the work be ordered, that the work shall be divided into sections, and the time for completing it shall be fixed, the letting of the work shall be advertised, and that the order for the work shall not be made at a special session of the board of supervisors. These things are required when the ditch is first established, and the work done, but not in case of repairs ordered. See Code, section 1214, above cited.

The reopening and repairs are really contemplated when the ditch is originally ordered. Unless the ditch be reopened when filled by the action of the frost and water or other cause, and repaired when injury has been sustained by floods or other causes, the original

outlay would be wholly lost. The law contemplates, what is familiar in the experience of all, that improvements of this kind require constant watchfulness and care to preserve them and their usefulness. It was not the purpose of the law to·authorize the construction of the ditch without conferring authority and providing a manner of pursuing it. Such authority is conferred upon the supervisors by section 1214, and the mode of exercising it pointed out. It is not required therein that the petition and proceedings prescribed in the preceding sections shall be had. The supervisors, by the petition, notice, and other prior proceedings, acquired jurisdiction of the subject-matter involved, and of the lands and landholders to be assessed. The statute empowers them, after such jurisdiction has been acquired, to keep in existence the ditch in the manner prescribed in section 1214. The law intended that the ditch should be permanent and enduring, and that, its preservation should not depend upon the acquisition of jurisdiction by the supervisors through a petition which might never be presented, and which they would have no power to cause to be presented. It did not intend that a part of the landowners, after having been heavily assessed for benefits, should lose their outlay by reason of the ditch becoming filled up, and their reclaimed land again become a pond, for the reason that the other landowners had changed their views as to the utility of the ditch, and·therefore refused to sign a petition for making repairs.

It will be observed, upon a careful reading of section 1214, that when it becomes necessary to reopen or repair the ditch the auditor has power without petition, and without the direction of the supervisors, to appoint the commissioners contemplated by the section, who shall make an apportionment of the expenses of the repairs or reopening, and report to the board of supervisors, whose duty it then becomes to assess such expenses and costs upon the owners of the lands bene-

fited. It is very plain that the jurisdiction acquired by the original petition, notice, and other proceedings continues, and that the duty of exercising that jurisdiction is imposed upon the supervisors.

It is urged as an objection that, after the original assessment, an addition to the list of lands was made without the consent of the appraisers. It will be readily seen, upon a careful reading of section 1214, that the commissioners appointed under that section can make an assessment upon lands benefited by the reopening and repairs of the ditch. This is done under the authority conferred by that section, and does not depend upon the action of the original commissioners. This consideration is a complete answer to the objection. These views dispose of all positions assumed in the first count or first division of the plaintiff's petition.

V. It is made a ground of complaint in the second count of the petition that a large part of the work was 2. ___: ___: ___: done when the board of supervisors had extension into not established or located a ditch. The adjoining county. repair of a ditch may involve work to be done elsewhere than in or at it. Embankments or walls may be required, and material therefor may be obtained away from the ditch, or a new channel to straighten the old one may be made, and the like, which are rendered necessary by the action of floods or by other causes. The ditch is not expected to excel all the works of man by being perfect from the beginning. Its faults and imperfections may be removed by subsequent repairs or changes, until it attains that measure of usefulness which was the purpose of its builders.

VI. It is alleged that some of the work was ordered, not by the board of supervisors, but by an individual member of the board. It is not shown that he was not an officer or agent of the board with the authority to direct the work, and expressly or impliedly clothed with authority by the board to do so.

VII. It is charged that an extension of the ditch was built in Harrison county. In order to deepen the ditch which the statute authorized, it may have been necessary to seek a new outlet or terminus of the ditch in order to find the necessary fall. Having authority to deepen the ditch, the supervisors had power to do what was necessary to execute this authority, and, if it was necessary to extend the ditch to deepen it, they had authority to do so. It is not shown that the ditch was not extended into Harrison county under authority of the statute providing for the construction of ditches in more than one county. See Miller's Code, pp. 422, 423.

VIII. It is set up in the third count of the answer as an objection to the proceedings, that no notice was given that the plaintiffs' lands were assessed. We have shown that such notice is not required by the statute. The assessment is in the nature of a tax. It has never been supposed that after the levy of a tax the taxpayer must have notice of the levy. But the plaintiffs had the right of appeal, and in that way their interests had ample protection. Code, sec. 1214, 1216. And before the assessment for the work is enforced by divesting the plaintiffs of their titles to the lands, they are entitled to the notice provided to be given in the case of sale of lands for taxes before deed can be made. Code, sec. 1214.

3. ——: ——: ——: notice of assessment.

IX. It is urged that the statute under which the assessment for the ditch was made is in conflict with article 1, section 9, of the constitution, in that the plaintiffs are thereby deprived of their property without due process of law. As we have said, the assessment is made in the exercise of the taxing power of the state. *Warren v. Henly*, 31 Iowa, 31, 39. The exercise of the taxing power in accord with the law of the state, whereby assessments are levied upon property, is not the depriva-

4. ——: ——: ——: constitutionality of statute.

tion of property without due process of law. The assessment and levy of taxes and assessments in accord with law, by proceedings wherein are provisions for an appeal, or other means of correcting any error, illegality, or want of authority, is not in conflict with the provision of the constitution against the deprivation of property without due process of law. *Allen v. Armstrong*, 16 Iowa, 508; *Stewart v. Board*, 30 Iowa, 9, 28.

These views dispose of all questions in the case, and lead to the conclusion that the judgment of the district court ought to be AFFIRMED.