Frank Ross, Appellant, v. The Board of Supervisors of Wright County, Iowa, and S. A. Keeler, Auditor of said County, Appellees.

|      |     |
|------|-----|
| 128  | 427 |
| 129  | 536 |
| 128  | 427 |
| 137  | 439 |
| 128  | 427 |
| 140  | 496 |
| f140 | 533 |
| 128  | 427 |
| f144 | 176 |

**Drains:** PROCEEDINGS TO ESTABLISH : CURATIVE STATUTE. Where proceedings for the construction of a drainage ditch were commenced under a statute, void because failing to provide notice to certain property owners whom it was proposed to assess, it was competent for the legislature by amendment of the statute to validate the same by providing for such notice and to make the act retroactive and applicable to pending proceedings.

**Failure to notify landowner:** WAIVER. Failure to notify one landowner of proceedings to establish a drainage ditch will not render the same invalid in favor of those properly served with notice; and voluntary appearance by the omitted owner is a waiver of objections based on failure to give notice.

**Guardian and ward:** APPROVAL OF GUARDIAN'S ACT : NOTICE. Where the guardian of a minor voluntarily appeared to a proceeding to establish a drainage ditch and procured an assessment of damages, it will be presumed in a collateral proceeding, that the ward was notified of a subsequent proceeding to obtain an approval of the guardian's action.

**Constitutional law:** DRAINAGE DISTRICTS : NOTICE. Chapter 2, title 10, of the Code as amended by the Thirtieth General Assembly is not unconstitutional because failing to provide notice to a property owner whose lands are affected by the establishment of a drainage ditch, and a hearing as to what land shall be included in the drainage district and as to whether his land shall be included therein.

**Constitutional law:** RIGHT TO APPEAL. The provision in Code, section 1947, that a landowner, on appeal from the order of a board of supervisors fixing the assessment upon lands within a drainage district, shall not be permitted to show that his lands received no benefit from the improvement, does not render the act of which said section is a part unconstitutional because limiting the scope of the appeal, as an appeal is not a constitutional right.

**Levy of drainage tax.** It is proper to levy a tax for the construction of a drainage ditch before the improvement is completed.

*Appeal from Wright District Court.*— Hon. W. D. Evans, Judge.

Thursday, July 13, 1905.

Certiorari proceedings to prevent the assessment and collection of the cost of constructing a ditch pursuant to the provisions of chapter 2, title 10, .of the Code, and acts supplementary thereto. The district court found for the defendants, dismissed the petition, and plaintiff appeals.— *Affirmed.*

*Nagle & Nagle,* for appellant.

*C. F. Peterson, D. C. Chase,* and *S. Flynn,* for appellees.

Weaver, J.— Proceedings to procure the location and construction of the ditch were instituted by petition as required by the terms of the statute about March 13, 1903, and a bond to secure payment of costs and expenses was filed and approved. Thereupon the auditor placed a copy of the petition in the hands of an engineer, who made survey of the proposed improvement, and on August 16, 1903, reported the same to the board of supervisors, with his estimate of the costs of construction. Beginning on March 9, 1903, notice of the proposed improvement was served personally or by publication upon the owners of the lands through which the ditch was to be constructed that the matter would come up for hearing at the regular June, 1903, session of the board. Certain claims for damages having been filed, appraisers were appointed, who filed their report August 17, 1903. At the September, 1903, session of the board further consideration of the matter was postponed until November 12, 1903, at which time the ditch was established, and its construction ordered. Before any further proceedings were had in the matter, this court hav-

ing held chapter 2 of title 10 of the Code to be unconstitutional, in that it undertook to provide for an assessment of the cost of the ditch in part against the lands in the vicinity not intersected by or bordering upon such ditch, without any provision for notice to the owners of such lands (*Beebe v. Magoun,* 122 Iowa, 94, and *Smith v. Peterson,* 123 Iowa, 672), the General Assembly of the state undertook to remedy the defect thus disclosed. See chapter 67, page 59, Laws 30th Gen. Assem., approved April 29, 1904. Thereafter the board of supervisors proceeded with the matter of the construction of the ditch in question, following with substantial accuracy the provisions of the statute as amended by the act of the Thirtieth General Assembly, and were about to assess the expense of such improvement upon the lands found to be benefited thereby, when this action was begun in certiorari to have the proceedings adjudged void. The foregoing history of the case is sufficiently full and specific to enable us to understand the force and effect of the points made by counsel in argument.

I. The first and principal contention on part of the appellant is that, the proceedings to secure the construction of the ditch having been begun under a void statute, the subsequent amendment, even though it had the effect to make the statute constitutional and valid, could have no effect to give life to the pending proceedings or authorize an assessment of the cost of a ditch thus constructed upon lands supposed to be benefited thereby. Assuming, for present purposes, that it is competent for the Legislature to provide for the construction of a ditch for drainage purposes and the apportionment of the cost thereof as a special assessment upon lands thereby benefited, we think this objection cannot be sustained. Referring to the statute as it stood prior to the amendment, we find that it provided for notice of the institution of the proceedings to the owners of lands intersected by or abutting upon the ditch. Code, section 1940. As

1. Drains: proceedings to establish curative statute.

to such owners it has never been held that, when thus brought into the proceedings, they were entitled to any further notice of the succeeding steps of the statute in letting the contract, classifying the lands, or making the apportionment of the costs and expenses. On the contrary, it seems to be well settled that a statute which provides for notice to the property owner at some stage of the proceedings before the assessment is made is not open to the constitutional objection simply because it does not provide for a new or additional notice of each successive step leading up to the assessment. *Yeomans v. Riddle,* 84 Iowa, 147; *Oliver v. Monona Co.,* 117 Iowa, 43; *Weyerhaueser v. Minnesota,* 176 U. S. 550 (20 Sup. Ct. 485, 44 L. Ed. 583); *Winona & St. P. Land Co. v. Minnesota,* 159 U. S. 526, (16 Sup. Ct. 83, 40 L. Ed. 247); *Voight v. Detroit,* 184 U. S. 115, (22 Sup. Ct. 337, 46 L. Ed. 459).

The fatal objection to the proceedings under the statute in its original form was found in the further provision contained in Code, section 1946, whereby, when the construction had been determined upon, and an apportionment and assessment of the expense were to be made, it was provided that the same should be charged not only upon the property through which the ditch was laid, and whose owners had been notified as aforesaid, but upon all other lands " in the vicinity " which a commission appointed for that purpose might find to be benefited by the improvement. No provision was made for notice to the owners of the additional lands sought thus to be taxed, and this we held to constitute a taking of property without due process of law as to such persons and therefore unconstitutional. *Smith v. Peterson, supra; Beebe v. Magoun, supra.* In the Smith Case we further held the statute to be of no force or effect against the owners of lands intersected by the ditch and upon whom the notice required by section 1940 had been served, not because it was unconstitutional as to such persons, but because the void provision as to " lands in the vicinity "

appeared to be such an essential feature of the scheme or plan sought to be effected that its elimination would lead to results·not contemplated by the Legislature, and defeat the purposes which the statute was intended to promote. In other words, the methods of the statute were constitutional and valid up to the point where the report of the commissioners appointed to classify the benefited lands and apportion thereto the cost of the improvement was returned to the board, but the failure to provide for notice to all the owners of property thus affected before confirmation of such report rendered ineffectual and void any attempt to make and enforce a valid assessment. The proceedings relating to the ditch in controversy reached just this state of advancement before the amendment to the statute found in chapter 67, page 59, Laws 30th General Assembly, was enacted. That amendment leaves the statute unchanged as to all the proceedings in such cases from the filing of the petition up to the return of report made by the commissioners appointed to classify the benefited lands and apportion the expenses, and provides that when this stage is reached a time shall be fixed for hearing objections thereto, and notice thereof shall be served personally upon residents and upon nonresidents by publication, and upon such hearing the board is empowered to determine all objections to the assessment, and may increase, diminish, annul, or affirm the apportionments made in the commissioners' report, or any part thereof, as shall be found just and equitable. By section 2 of the amending act this amendment was made to apply to all proceedings then pending before the boards of supervisors for the location and construction of drains.

Was it competent for the Legislature to thus provide and authorize the defendants, with other boards of supervisors having similar proceedings in hand, to cause proper notice to be served, and proceed thereon to make an apportionment and assessment of the cost of the ditch? In our judgment, this question must be answered in the affirmative.

The Constitution of Iowa does not forbid the enactment of retroactive laws, and this court has frequently upheld the validity of such statutes. *Land Co. v. Soper,* 39 Iowa, 112; *Tilton v. Swift,* 40 Iowa, 78; *McMillan v. Co. Judge,* 6 Iowa, 391; *Huff v. Cook,* 44 Iowa, 639; *Sully v. Kuehl,* 30 Iowa, 275; *State v. Squires,* 26 Iowa, 340; *Galusha v. Wendt,* 114 Iowa, 597; *Savings & L. Ass'n v. Heidt,* 107 Iowa, 297; *Windsor v. Des Moines,* 110 Iowa, 175; *Ferry v. Campbell,* 110 Iowa, 290; *Fair v. Buss,* 117 Iowa, 164; *Clinton v. Walliker,* 98 Iowa, 655. That the Legislature may by amendment cure a constitutional defect in a statute the main purpose of which is within the scope of legislative power and give such amendment retroactive effect upon cases already begun and pending is expressly held by this court in *Ferry v. Campbell, supra.* In that case proceedings had been begun to enforce a collateral inheritance tax under a law which was found to be unconstitutional for want of provision for notice to parties in interest. Pending the proceedings, the statute was amended providing for notice in such cases and making the amendment applicable to cases then undetermined. Acts 27th General Assembly, page 27, chapter 37, section 2. This we found to be a valid exercise of legislative power, so far at least as it related to personal estate; and unless we propose to overrule that precedent — which we are not prepared to do — we see no way to avoid giving like effect to the amendment to the drainage act with which we are now dealing. The same principle is recognized and upheld in several of the Iowa cases above cited.

Appellant's claim that the amendatory act was not intended to have a curative effect upon proceedings then pending is clearly opposed to the language employed therein. It was the apparently studied purpose of the Legislature to remove the objection based upon the failure of the law to provide for notice to the landowners, and to give legal force and effect to proceedings then pending and liable to be rendered nugatory if such defect was not cured. While the

term "legalized" is not expressly applied to the preliminary proceedings already had, section 2 of the amendment hereinbefore quoted would be idle and meaningless if they are not to be considered valid and sufficient to sustain the assessment made pursuant to the notice for which the act provides. The principle which we here apply was affirmed by us in *Butts v. Monona County,* 100 Iowa, 74. Perhaps no case can be found more nearly in point than *Spencer v. Merchant,* 125 U. S. 345 (8 Sup. Ct. 921, 31 L. Ed. 763). In that case, under a statute authorizing the same, a city ordered a work of local improvement to be made. The work was done and the tax levied. After the levy had been made, and some of the property owners had paid the tax, other owners resisted payment, and were successful in having the proceedings adjudged void because the statute failed to provide for any notice, and was therefore unconstitutional. *Stuart v. Palmer,* 74 N. Y. 183 (30 Am. Rep. 289). After this adjudication was had, the Legislature passed another act authorizing a relevy of such tax after due notice to the owners who had refused to pay their original apportionment. The validity of this legislation was affirmed by the Court of Appeals of New York — *Spencer v. Merchant,* 100 N. Y. 585 (3 N. E. 682), and reaffirmed by the Supreme Court of the United States, as above cited. The arguments there used against the validity of the later statute followed the same lines pursued by counsel in the case at bar, and were held unsound by the highest court of New York and of the nation. We do not stop to quote from these opinions, but those who care to pursue the inquiry will find the question there fully and exhaustively considered.

II. At the time the ditch was located the records of the county indicated that one of the tracts of land intersected by it belonged to one Pratt, a resident of New York, and notice directed to him was served by publication. It appears, however, that Pratt had died before the proceedings

were instituted, and a minor daughter, Helen Portia Pratt,

2. Failure to notify land-owner: effect; waiver. was the real owner, and the person upon whom the notice should have been served. Later, however, and after the order of November 12, 1903, establishing the ditch, Helen Portia Pratt, by her guardian, appeared to the proceedings, and filed a claim for damages, which was allowed, and the allowance was thereafter approved by the district court having jurisdiction of the guardianship matter. Counsel for appellant now contends that, even if chapter 67, page 59, Laws 30th General Assembly, be given retroactive effect, and made applicable to proceedings then pending, the failure to include Helen Portia Pratt in the notice pursuant to Code, section 1940, is a fatal defect, and the board of supervisors and county auditor never obtained jurisdiction to inaugurate the proceedings, and that each and all of the orders subsequently made are therefore wholly void. This position is sought to be supported by certain decisions of this court in cases relating to the establishment or vacation of public highways. See *R. R. v. Ellithorpe,* 78 Iowa, 415, and *Moffit v. Brainard,* 92 Iowa, 122. But neither of these cases, nor any other which we have been able to discover, go to the extent claimed by counsel. The most that can be said as to this class of cases is that they apply the fundamental rule that no person's property can be taken from him by a court or other tribunal without notice and an opportunity to be heard.

Generally speaking, at least, no one is entitled to raise the objection except the party entitled to the notice. Assume, for instance, that proceedings for the establishment of a highway several miles in length, and passing through the lands of many different persons, are instituted, carried through to the final order, and the road is established and opened to travel. If, a year or two later, it be discovered that a nonresident owner of a single small tract was by some mistake omitted from the notice for which the statute provides, we may concede that as to such land and such owner

the order of establishment is voidable or void; but it would be a somewhat startling proposition to hold that failure to notify this one owner is a jurisdictional defect of which every other owner along the line may take advantage, even though he himself was duly and properly notified. Moreover, when the omitted owner voluntarily appeared to the proceedings, and procured an allowance of her claim for damages, we think it will be held to operate as a waiver by her of all objections based upon the failure to serve her with notice. The only interest the other landowners could have in her being properly made a party was that her property might be compelled to bear its share of the expense in case the ditch should be constructed, and when she voluntarily appeared the only possible ground of objection on their part was removed. *Poundstone v. Baldwin*, 145 Ind. 139, (44 N. E. 191); *Hauser v. Burbank*, 117 Mich. 642 (76 N. W. 111); *Wolpert v. Newcomb*, 106 Mich. 357 (64 N. W. 326); *Hurst v. Martinsburg* (Minn.) (82 N. W. 1099).

Under the law of the cases here cited — and we find none to the contrary — it is entirely immaterial whether a guardian is authorized to waive service of notice upon his

3. Guardian and ward, and we need not here pass upon that
Ward: approval of question. Had the notice been served, the
guardian's act;
notice.       ward could have done no more than to appear

by guardian for the protection of her rights. He did so appear, and brought the matter before the court for its consideration and approval. If notice to the ward was necessary to bind her by such approval, we must assume in this collateral proceeding that the court did not act without it.

III. The statute as amended provides, as we have seen, for the appointment of commissioners who examine

4. Constitu-        the lands with the view of determining what
tional law:
drainage dis-      tracts are benefited by the improvement, class-
tricts; notice.   ify them as "low," "wet," "swamp," and

"dry," and fix their estimate of the proportion of the ex-

pense which each tract ought to bear. In effect, their report is a designation of the boundaries or territorial extent of the drainage district and a statement of the finding of the commissioners as to a just and equitable distribution of the cost upon the several tracts of land embraced in the territory so marked out by them. Appellant takes the position that the landowner is entitled to notice and hearing as to the extent of this district, and whether his land shall be included therein, and that the failure to provide for such notice and hearing renders the statute unconstitutional. In our opinion, the objection is unsound. The division of a state or lesser municipal territory into districts for the purposes of taxation or public improvement is a legislative matter, and the citizen affected thereby cannot complain because the power is exercised without notice to him. If, for instance, the Legislature saw fit to divide the entire state into drainage districts, and make the lands in each district chargeable with the expense of such drains therein as the public welfare might demand, we apprehend that such legislation would be open to no serious constitutional objection on the ground that it deprives the landowner of property rights without due process of law. That such legislative power for local purposes may be delegated by the Legislature to minor municipalities is a matter of universal recognition and constant practice. For example, a city may, by its council, divide its territory into sewer districts (Code, section 794), or the entire city may be declared a single district, and the cost of a sewer be made a general charge upon all the property within its boundaries; and the fact that an individual property owner has been given no hearing in the matter of the districting, or that he may believe that his property is in no manner benefited by the improvement, affords him no ground for impeaching the validity of the statute or ordinance by which the districting was accomplished. Other familiar instances of the exercise of this delegated legislative power will probably occur to the in-

telligent reader.   *State v. King,* 37 Iowa, 462; *State ex rel. Witter v. Forkner,* 94 Iowa, 1; *Topeka v. Huntoon,* 46 Kan. Sup. 634 (26 Pac. 488); *Robinson v. Schenck,* 102 Ind. 307 (1 N. E. 698); *Kinney v. Zimpleman,* 36 Tex. 554; *Stanfill v. Court,* 80 Ala. 287; *Dunn v. Wilcox Co.,* 85 Ala. 144, (4 South. 661); *Hyde Park v. Spencer,* 118 Ill. 446 (8 N. E. 846); *Turner v. Detroit,* 104 Mich. 326 (62 N. W. 405); *State v. Stewart,* 74 Wis. 620 (43 N. W. 947, 6 L. R. A. 394).

The very objection here raised by appellant was involved in *Voight v. Detroit,* 123 Mich. 547 (80 N. W. 253). And see same case on appeal, 184 U. S. 115 (22 Sup. Ct. 337, 46 L. Ed. 459). In the cited case the Michigan court says:

No provision is made for a notice to property owners of a time and place for hearing upon either the question of fixing a taxing district or the question of the amount of the award to be spread thereon. This, it is claimed, leads to taking property without due process of law, and is unconstitutional. The statute provides for a hearing in relation to the proportion each piece of property shall bear to the whole of the improvement, and the proper notice of this hearing was given. It is claimed by counsel that complainant was entitled to notice of the hearing relating to the establishment of the assessment district and of the amount of the total assessment, and because the statute does not provide for these notices it is unconstitutional as taking property without due process of law. We do not think this proposition of counsel can be maintained. The right of the Legislature to establish special assessment districts in which all the taxes necessary to be raised to pay for a local improvement may be assessed was for a long time questioned, but that right has so often been sustained by the courts that it is no longer an open question.

After citing authorities, the court proceeds:

Under these authorities it is very clear that the Legislature might have established the special assessment district. Had it seen fit to do so, would it be claimed that its right to

do so could have been questioned as unconstitutional because no notice was given to the property holders affected thereby that it intended to establish such a district? If the answer to this question should be in the negative, why, when the Legislature has delegated to the common council of the city the right to establish the special district, should it be said that the law delegating this power is unconstitutional because notice is not required? The establishment of the special assessment district in the one instance by the Legislature and in the other instance by the council is the exercise of a legislative power, with which the courts will not ordinarily interfere.

Upon appeal to the United States Supreme Court the judgment of the State court was affirmed. The provision of law by which, when the proceeding has reached the stage where it is proposed to levy the tax, a notice must be served on the property owner, was held sufficient to avoid the constitutional objection, notwithstanding no notice is required in respect to the creation of the district or the determination of the aggregate amount of the tax to be collected. See, also, to the same effect, *State v. Stewart,* 74 Wis. 620; *People v. Mayor,* 4 N. Y. 419 (55 Am. Dec. 266); *Rogers v. St. Paul,* 22 Minn. 494; *Kelly v. Minneapolis,* 57 Minn. 294 '(59 N. W. 304, 26 L. R. A. 92, 47 Am. St. Rep. 605); *Erickson v. Cass Co.,* 11 N. D. 494 (92 N. W. 841); *Paulsen v. Portland,* 149 U. S. 30 (13 Sup. Ct. 750, 37 L. Ed. 637). In the last-cited case the rule is thus stated: "It is settled that if provision is made for notice to and hearing of each proprietor at some stage of the proceedings upon the question of what proportion of the tax shall be assessed upon his land, there is no taking of property without due process of law." In the case before us there is, under the statute, as amended, ample provision for notice to every landowner, and opportunity given for the hearing of all objections he may have to assert against the validity and justice of the proposed charge upon his property. This, under the law, is all he can rightfully ask. It is to be noted, moreover, that

upon the hearing which the statute gives the owner· pursuant to the notice provided for by the amendment, the board of supervisors may not only increase or diminish the apportionment of the tax reported by the commissioners, but may " annul " it entirely.   The action of the board at this meeting is the final and authoritative settlement of the boundaries of the taxing district, and this is done only after full opportunity is given to each landowner to show cause, if he has any, why his land should not be included therein.   It is not · denied that the notice required by the amended statute was given, and plaintiff given full opportunity to be heard, and the objection here made is not well taken.

IV.   The constitutionality of the act is further questioned because by Code, section 1947, which allows an appeal from the assessment made by the board of supervisors, it is also provided that upon the trial of the appeal it shall not be competent for the owner to show that his land received no benefits from the improvement.   Counsel seem to contend that the landowner is thus cut off from all opportunity to be heard on the question whether his land receives any benefit by reason of the ditch for the construction of which he is taxed.   But, as noted in the concluding part of the preceding paragraph, this is a mistake.   The landowner is given opportunity to appear before the board of supervisors, which body is authorized to try all such objections, and, if it be found that any tract of land reported by the commissioners is not in fact benefited by the improvement, it may be relieved of the burden. The effect of the restrictive clause in Code, section 1947, is to deny the right of appeal from this finding of the board of supervisors, and confine all further review to the question whether the appellant's land has been assessed in equal and fair proportion, as compared with other property embraced in the district.   That a statute making the finding of the board conclusive upon the question whether a given tract of · land is properly included in the benefited district, and deny-

5. Constitutional law: right of appeal.

ing appeal therefrom, is not an unconstitutional deprivation of property without due process of law, is a rule which has been affirmed by the great weight, if not the universal current, of authority. The right to an appeal from one court or tribunal to another has never been held to be in itself a denial of due process of law. The power to make a final determination beyond which there is no appeal must rest somewhere, and in the absence of express or clearly implied constitutional limitations upon its authority in this respect the Legislature may confide that power in any given proceeding to any court, board, or commission. Of course, the tribunal thus designated must observe due process of law — that is, the party must be given notice and have opportunity to be heard — but, if the finding be against him, no constitutional guaranty is violated by denying him the right of appeal. Such is clearly the doctrine of our cases. *Chambliss v. Johnson,* 77 Iowa, 612; *Lambert v. Mills Co.,* 58 Iowa, 666; *Allerton v. Monona,* 111 Iowa, 560; *Oliver v. Monona,* 117 Iowa, 43. To the same point, see *State ex rel. Hughes v. Dist. Court* (Minn.), 103 N. W. 744; *State ex rel. v. Stewart,* 74 Wis. 620 (43 N. W. 947, 6 L. R. A. 394); *Dickson v. Racine,* 66 Wis. 545 (21 N. W. 620); *Teegarden v. Racine,* 56 Wis. 545 (14 N. W. 614); *Rogers v. St. Paul,* 22 Minn. 494; *Weaver v. Templin,* 113 Ind. Sup. 298 (14 N. E. 600); *Reeves v. Grottendick,* 131 Ind. Sup. 107 (30 N. E. 889); *Kleine v. Tuhey,* 13 Ind. App. 74 (40 N. E. 144); *Hibben v. Smith,* 191 U. S. 310 (24 Sup. Ct. 88, 48 L. Ed. 195); *Waterworks v. Schottler,* 110 U. S. 347 (4 Sup. Ct. 48, 28 L. Ed. 173); *Bonfoy v. Goar,* 140 Ind. 292 (39 N. E. 56); *Spencer v. Merchant,* 125 U. S. 345 (8 Sup. Ct. 921, 31 L. Ed. 763); *Re Fowler,* 53 N. Y. 60; *Dodge Co. v. Acom,* 61 Neb. 376 (85 N. W. 292); *Griffith v. Pence,* 9 Kan. App. 253 (59 Pac. 677); *Joplin M. Co. v. Joplin,* 124 Mo. 129 (27 S. W. 406); *Gillett v. McLaughlin,* 69 Mich. 547 (37 N. W. 551); *Bowersox v. Seneca, etc.,* 20 Ohio St. 496; *People v. Hagar,*

66 Cal. 59 (4 Pac. 951); *Britton v. Blake*, 35 N. J. Law, 208; *Britton v. Blake*, 36 N. J. Law, 442; *Hagar v. District*, 111 U. S. 701 (4 Sup. Ct. 663, 28 L. Ed. 569); *Davidson v. New Orleans*, 96 U. S. 97 (24 L. Ed. 616). " Due process of law " does not necessarily imply judicial procedure in a court of record or right of trial by jury. *Re Bradley*, 108 Iowa, 476; *Pub. Cl. House v. Coyne*, 194 U. S. 497 (24 Sup. Ct. 789, 48 L. Ed. 1092); *Weimer v. Bunbury*, 30 Mich. 201; *Spencer v. Merchant, supra; Yeomans v. Riddle*, 84 Iowa, 147; *Wulzen v. Board*, 101 Cal. 15 (35 Pac. 353, 40 Am. St. Rep. 17); *Munson v. Commissioners*, 43 La. Ann. 15 (8 South. 906); *McMahon v. Palmer*, 102 N. Y. 176 (6 N. E. 400, 55 Am. Rep. 796); Cooley's Const. Lim., pages 354, 355; *McKeevers v. Jenks*, 59 Iowa, 300; *Re Meder Irr. Dist.*, 92 Cal. 296 (28 Pac. 272, 675, 14 L. R. A. 755, 27 Am. St. Rep. 106); *Hagar v. Rec. Dist.*, 111 U. S. 701 (4 Sup. Ct. 663, 28 L. Ed. 569). The holding of the trial court comes well within the law of the cited cases, and must be upheld.

V. Some other questions are suggested as to the details to be observed in carrying the statute into effect. Among other things, it is said that the tax should not be levied until the work is actually done. We see no reasonable ground for the objection. **6. Levy of drainage tax.** Certainly the statute seems to authorize the proceeding taken by the supervisors. When the contract is let, the amount for which the drainage district is to be made liable is approximately ascertained, and it is the dictate of business prudence that the board proceed at once to provide for the means with which to discharge the debt. Our attention is called to no precedent or rule of law in support of the proposition stated by counsel, and we think the objection must be overruled. If, as claimed, the board failed to fix the proportion of the tax to be paid yearly, we have to say that the petition in this action was filed September 21, 1904, interrupting the proceedings by the board before any

assessment was made, and that the order distributing payment over a series of years pertains to a matter of detail which we may presume the supervisors will properly attend to when the termination of this litigation leaves them free to go on with the matter.

Other points made in argument are merely incidental to or are governed by those which we have already considered at length, and do not require further discussion.

The conclusion reached by the district court is correct, and the decree appealed from is *affirmed.*