I. A. HOWARD, Appellant, v. THE COUNTY OF EMMET in
the State of Iowa, ROY J. RIDLEY, Auditor of Emmet
County, and C. W. CRIM, and I. A. HOWARD, Appel-
lant, v. E. O. HANSON, D. FITZGERALD, D. D. BUNT,
J. H. BARNHART and D. T. SORUM, Members of the
Board of Supervisors of Emmet County.

**Drainage:** SPECIAL ASSESSMENTS: CONSTRUCTION OF STATUTES. The
1 power to collect and levy a special assessment for drainage pur-
poses is a special power for a special purpose, and the statutes
authorizing its exercise will be strictly construed according to the
legislative intent.

Same: REASSESSMENTS. Special assessments for drainage purposes
2   are based upon the benefits conferred, and the statutes in rela-
tion thereto are to be construed if possible with that end in view.
Under this rule of construction it is held to be no objection to a
reassessment, under the Acts of the 30th General Assembly, that
a prior illegal assessment had been paid in full.

Same: NOTICE: ADJUSTMENT OF CLAIMS AND DAMAGES. Under the pro-
3   visions of Code section 1940, relating to notice of the location
and establishment of drains, and the Acts of the 30th General
Assembly, relating to a hearing of the land owner prior to a re-
assessment, the supervisors may make an equitable adjustment
of the landowners claims and consider the damages to his land.

Reassessment: OBJECTION: WAIVER. A landowner who has appeared
4   in response to a notice of reassessment, and failed to make ob-
jection that the law relating thereto is invalid, because failing to
provide for notice to landowners to appear and be heard on the
question of damages, has waived the objection.

*Appeal from Emmet District Court.*—HON. D. F. COYLE,
Judge.

WEDNESDAY, DECEMBER 16, 1908.

THE opinion states the case.—*Affirmed.*

*Soper & Alexander,* for appellants.

No appearance for appellees.

SHERWIN, J.—These two actions were by agreement
of parties tried upon the same evidence. The one first
named was an action in equity to redeem real estate from
a tax sale, and the second was an action of *certiorari* to
test the legality of certain proceedings of the board of
supervisors of Emmet County in reassessing a special
ditch or drainage tax. The only issue presented in both
appeals is as to the validity of a certain tax assessed by
the board of supervisors against the lands of the plaintiff.
The record conclusively shows the following facts: That

the plaintiff is the owner in fee of the S. ½ S. W. ¼ of
Sec. 34, Twp. 100, Range 31, Emmet County; that in 1901
the board of supervisors, under the provisions of Code,
sections 1939-1951, levied and assessed against plaintiff's
said land a ditch or drainage tax amounting to the sum of
$303.25, the same being the full amount of the alleged
equitable apportionment of the costs of the construction of
said ditch, and caused the same to be placed on the tax list
of the county as a tax against said land; that in September,
1902, the defendant Crim paid to the treasurer of the
county the full amount of said assessment, with interest,
penalties and costs; that at the time of such payment the
said Crim was the owner of a tax certificate against said
land.   In May, 1904, in the case of *Smith v. Peterson,*
123 Iowa, 672, involving an assessment in connection with
the same drainage proceeding, this court held that the
assessment of benefits was illegal and unconstitutional be-
cause no notice thereof was required or given, and in Au-
gust, 1904, the board of supervisors relevied and re-
assessed upon said land of the plaintiff the tax of $303.25,
and caused the same to be placed on the tax list for that
year as a tax against the property of the plaintiff with a
memorandum as follows: "Paid by C. W. Crim Septem-
ber 30, 1902, with penalty"—that on the 12th day of
August, 1904, the plaintiff applied to the auditor to re-
deem said land from tax sale, and tendered and offered to
pay the amount for which said land was sold to said Crim
and subsequent tax paid thereon by him, except the
amount of the ditch tax in controversy, which tender was
refused because it did not include the ditch tax.   The
plaintiff's pleadings alleged the foregoing facts, and fur-
ther alleged that the original assessments were without
authority and void because the statutes under which the
proceedings were had were unconstitutional and void, and
that the subsequent reassessment was illegal and void, for
the reason that at the time the reassessment was made the

whole amount of the original assessment against the plaintiff's land and the full amount for which they could be assessed had been paid to the county, and for the further reason that in so far as the acts of the Thirtieth General Assembly attempted to legalize the prior proceedings of the board of supervisors, they were unconstitutional and void, because the defect in the original drainage law was not such a defect as could be cured by said acts. The cases were tried on the issues thus joined, and the court sustained the reassessment and entered a decree confirming the tax as a valid and existing lien on the plaintiff's land.

Notwithstanding the importance of the question presented for determination in these cases, the appellees have not seen fit to file briefs, and we are therefore compelled to do work which they should have done. In the opinion of the writer the failure to file a brief in support of the judgment of the trial court in civil cases should be treated as a concession on the part of the appellee that the case should be reversed.

The appellant claims that the ditch tax was not a lien on her land, and that she was entitled to redeem from the sale for the regular taxes upon tender of the amount thereof. It is said that chapters 67, 68, Acts 30th General Assembly do not confer authority to reassess where the original assessment has been paid; that the purpose of the amendments was to enable the drainage district to collect for the district the cost of the ditch, and not to enable a stranger to the title, who had paid an assessment, to collect from the owner of the land. It is, of course, elemental that in construing a statute the legislative intent must govern, and it is also true that the power to levy and collect a special assessment for drainage purposes is a special power, conferred for a special purpose, and that statutes conferring such power will be strictly construed. *C. R. I. & P. Ry. Co. v. Ottumwa,* 112 Iowa, 300; *State*

1. DRAINAGE: special assessments: construction of statutes.

*v. Smith,* 31 Iowa, 493; *Polk County Savings Bank v. State,* 69 Iowa, 24.

Chapter 67, Acts 30th General Assembly was undoubtedly enacted to meet the constitutional requirement pointed out in *Beebe v. Magoun,* 122 Iowa, 94, and in the third section of the act it is provided that where the assessment and levy on account of any ditch or drain had been made by the board of supervisors without legal notice to the owner of the land affected thereby, and "the whole or any part thereof remains unpaid," the board of supervisors shall have the authority to recall the assessment or levy thus made and proceed anew (as provided in section 1 of the act which provides for notice) to apportion and "levy the cost of such improvement among the owners and upon the land benefited thereby, taking as a basis the original apportionment, and report of the commissioners upon which the board had theretofore acted, and the new assessment and levy made upon notice and hearing in such cases shall be certified by the county auditor to the county treasurer, re-entered upon the tax list and collected as other taxes for county purposes, and all payments made under the prior assessment and levy shall be credited upon the new assessment and levy." Section 4 of the same act makes further provision for reassessment and levy upon the lands benefited where the former proceedings have been found to be invalid. This act was approved April 29, 1904, and became effective May 4, 1904. Chapter 68, Acts 30th General Assembly was approved on the same day and became effective at the same time, and the seventeenth section thereof provides for a reassessment and relevy substantially in the language of section 3, chapter 67, but it provides that "in taxing up said benefits account shall be taken of the amount of the tax, if any, that has been paid by those benefited and credit therefor shall be given accordingly." It will be noticed that this action requires

2. SAME: re-assessments.

the board to consider the tax paid by those benefited by the improvement, while section 3 of chapter 67 provides that "all payments made under the prior assessment shall be credited upon the new assessment and levy." Insisting that the provisions of section 3 of chapter 67 confer the only authority for a reassessment and levy in this case, the appellant contends that the tax having been paid by Crim to protect a certificate of sale for the regular taxes, the board had no authority to make a reassessment and levy. The appellant's premises are false, and for that and other reasons his contention can not be sustained.

It is a familiar rule that statutes relating to the same subject-matter will be construed together, and that the legislative intent will be determined from a consideration of the entire law relating to the subject. We think there is no valid reason for saying that section 17 of chapter 68 does not apply to this case. And, if it does, the appellant practically concedes that his contention on this branch of the case is without merit. These special assessments are charged to the land because of the benefits thereto, and they are to be collected in the same way that ordinary taxes are collected. The reassessment and relevy provided for in chapters 67 and 68 are for the express purpose of compelling the benefited land to pay its just proportion of the cost of the improvement, and we think sections 3 and 4, chapter 67, standing alone, do not indicate any other intent on the part of the Legislature. The law authorizes the holder of a tax sale certificate to protect his interest therein by the payment of subsequent taxes, and section 1417 of the Code expressly provides for the refund of taxes found to have been erroneously or illegally exacted or paid. It was evidently the intent of chapter 67 to charge the land and those benefited, but, if the appellant's contention be correct, such a result could not be attained.

It is further said that the old drainage law as amend-

ed by section 3, chapter 67, and section 17, chapter 68, does not give the landowner who has not had actual no-

3. SAME: notice: adjustment of claims and damages.

tice of the proceedings an opportunity to appear and be heard on the question of damages, and for that reason is unconstitu-tional. But Code, section 1940, expressly provides for such notice prior to the location and establishment of the improvement. And, in case of a reassessment and relevy under the provisions of chapters 67 and 68, the landowner is given an opportunity to appear and be heard, and at such hearing the "board of supervisors shall proceed to hear and determine all objections made and filed to said report, and may increase, diminish, annul, or affirm the apportionment made in said report or any part thereof as may appear to the board to be just and equitable." The board is thus authorized to make an equitable adjust-ment of the landowner's claims and thereunder may un-doubtedly consider the damages to his land.

But, however this may be, the appellant is now in

4. REASSESSMENT: objection; waiver.

no position to raise the point because she appeared before the board in response to notice of reassessment and made no such objection. *Ross v. Supervisors,* 128 Iowa, 427.

The appellant's contention that the Legislature could not cure the defects in the old law because they were juris-dictional is disposed of by *Ross v. Supervisors, supra,* where the amendments are held to be without constitu-tional objection.

In both cases the judgments are *affirmed.*